**Dan FINCH and wife, Netta Finch, Appellants,**

v.

**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellee.**

No. 19435.

Court of Civil Appeals of Texas, Dallas.

March 16, 1978.

Rehearing Denied April 11, 1978.

John E. Agnew, Carter, Jones, Magee, Rudberg, Moss & Mayes, Dallas, for appellants.

Wayne Pearson, Burford, Ryburn & Ford, Dallas, for appellee.

AKIN, Justice.

The principal question presented by this appeal is whether certain services rendered by a wife to her husband are nursing services within the ambit of a compensation settlement in which Texas Employers' Insurance Association agreed to pay all future medical expenses incurred by the husband. Trial was to a jury which awarded the Finches $1,175.00 for nursing services. The Finches were dissatisfied with this amount and perfected this appeal, asserting that the trial court erred in overruling their motion for discovery of certain memoranda of the Association's expert, in overruling objections to questions concerning these memoranda and that the trial court improperly instructed the jury on the definition of "nursing services." Additionally, plaintiffs contend that the small amount of the jury's award was against the weight and preponderance of the evidence. We affirm.

This action arose out of an injury sustained by Finch while in the course of his employment. As a result of his injuries, Finch is now a paraplegic requiring care and treatment. A compromise settlement agreement was entered into whereby appellee, Texas Employers' Insurance Association (TEIA), agreed to pay all future medical and hospital expenses incurred as a result of Mr. Finch's injury. The Finches sued to obtain compensation for the nursing care Mrs. Finch provided her husband after TEIA refused to authorize compensation for her services under the settlement agreement. A summary judgment previously granted TEIA was reversed, *Finch v. Texas Employers' Insurance Association,* 535 S.W.2d 201 (Tex.Civ.App.—Texarkana 1976,

writ ref'd n. r. e.) and, on remand, a jury awarded the Finches $25.00 a month for the period of June 8, 1973, to the date of the judgment, a total of $1,175.00 for her services.

The Finches first complain that the trial court erred in overruling their motion for discovery to require TEIA to produce written memoranda of its employee and expert witness, Hope Larabee, and in sustaining objections made by TEIA to questions asked by Finches' counsel of Larabee inquiring about these memoranda. These notes, though not available at trial, were attached by TEIA to its response to the motion for new trial, and the Finches contend that this information shows that they were prejudiced by the denial of discovery. In support of their contention, they argue that although Larabee was an employee of TEIA when she prepared the notes, when she was called as an expert witness to give her opinion as to Finch's condition, these memoranda were discoverable citing two recent supreme court decisions, *Barker v. Dunham,* 551 S.W.2d 41 (Tex.1977) and *Lee v. Humphreys,* 20 Tex.S.Ct.Jour. 469 (July 23, 1977). Although these memoranda are discoverable under these authorities, our question here is whether the lack of discovery caused the rendition of an improper verdict since the Finches proceeded to trial without such discovery. Tex.R.Civ.Proc.R. 434, *Danziger v. Brandes,* 457 S.W.2d 146, 150 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.). *Kenney v. La Grone,* 62 S.W.2d 600, 601 (Tex.Civ.App.—San Antonio 1933), aff'd 127 Tex. 539, 93 S.W.2d 397 (1936). The Finches assert that the denial was harmful in that they were unable to adequately cross-examine Larabee. For example, they point to a comment in her notes that she had suggested that he get a checkup from a physiatrist (one who helps a paraplegic adapt to his condition). They contend that if they had had this information, a new line of questioning could have been developed based upon the theory that his difficulty in adjusting to his paraplegia increased the need for the type of nursing care rendered by his wife. In our view, no harm is shown because other testimony indicated that Finch had trouble adjusting to his condition. Indeed, the information disclosed in Larabee's notes is not inconsistent with her testimony at the trial.

Appellants next complain of the trial court's definition of nursing services accompanying Special Issue No. 2, which inquired into the value of the nursing services rendered by Mrs. Finch. That instruction is:

You are instructed in your consideration of this issue that you are not to take into consideration any services performed by Netta Finch as usual domestic services performed by a wife, but are to only consider the services usually performed by a person engaged in such activity.

Appellants argue that this instruction was a prejudicial comment on the weight of the evidence because it assumed as a fact that a wife's domestic services cannot be nursing services. We cannot agree. This instruction is in accord with the supreme court decision in *Transport Insurance Co. v. Polk,* 400 S.W.2d 881 (Tex.1966). In *Polk,* a wife sued to recover for nursing services she rendered her quadriplegic husband. The insurance company argued that a wife could not recover for nursing services rendered her husband because they are part of the wife's marital obligation, but it did not object to the issue on the ground that it permitted recovery for the wife's services which were ordinary marital duties. The court held that a wife could recover for extraordinary services she renders her husband. Implicit in this decision is that a wife cannot recover for those services which a wife normally renders to an able-bodied husband. Consequently, in order to preclude a jury from awarding recovery for services which probably would have been performed even if the husband was not disabled, it is necessary that a jury be instructed that the usual domestic marital services are not compensable as nursing services. The instruction here does not make nursing services and domestic services mutually exclusive but permits the jury to delineate between the two based upon the

evidence. Since the Finches were permitted to introduce evidence that all of the services Mrs. Finch performed were nursing services, the trial court's instruction correctly permitted the jury to determine whether they were extraordinary services rendered because of her husband's disability, or services that are usually rendered as a part of the marital obligation.

Appellants insist that they were entitled to the instruction submitted in *Home Indemnity Co. v. Draper,* 504 S.W.2d 570 (Tex. Civ.App.—Houston [1st Dist.] 1974, writ ref'd n. r. e.). In that case, nursing care was defined to include all services performed by the wife, as required by the husband's condition, resulting from his injuries. This definition, however, was not specifically approved by that court, since there was no point on appeal attacking it. Moreover, *Draper* is distinguishable from our case in that there it was clear that everything the wife did was an extraordinary service because her husband was a quadriplegic requiring continuous attention. Here, a question was presented as to whether all of the things Mrs. Finch did for her husband were necessary. For example, Finch testified that among other things, his wife helped him dress and undress, prepared his meals, gave him his medication, and assisted him with his bath. A nurse called by the Finches testified that these were all nursing services. On the other hand, TEIA's expert witness, Larabee, testified that Finch could do many of these things by himself. His discharge report from Caruth Rehabilitation Center indicated that he was able to take care of all of his needs from a wheelchair. Even Finch testified that he could do certain things for himself—*e. g.,* dressing—but it took him much longer and when he finished, his clothes were wrinkled. Thus, the jury could conclude that most of the services performed by the wife were not necessary nursing services.

Next, the Finches argue that the trial court committed reversible error in receiving the jury's verdict and entering judgment on the basis of Special Issue No. 2 which stated:

What do you find from a preponderance of the evidence to be the fair and reasonable cost of necessary nursing services, if any, furnished by Netta Finch to Dan Finch, from June 8, 1973 to date for the injury sustained by Dan Finch on October 17, 1969 . . . answer in dollars, if any, and cents, if any.

The jury answered "$25.00 a month." Appellants contend that the jury's answer was non-responsive to the question asked, was not in compliance with the court's instruction, and was so indefinite that it could serve no basis for a valid judgment. In this respect, they urge that the issue requires an answer of a single figure for the total time period rather than a monthly figure. This contention is untenable because all the trial judge needed to do to render a judgment was to multiply the number of months by $25.00. A verdict is sufficient if all that is required is a mathematical computation to arrive at the total amount of damages. *Secrest v. Jones,* 30 Tex. 597, 604 (1868); *Uselton v. State,* 499 S.W.2d 92, 98 (Tex. 1973). Appellants recognize this general rule but contend that it has no application where testimony showed that for a month Mrs. Finch was in a hospital and unable to care for her husband and that in some months he required greater care than in others and, consequently, the cost of nursing services would be greater in some months than others. We cannot agree with this contention because the jury's figure apparently represents an average sum of $25.00 per month. As such, it reflects the testimony at the trial, including that of appellants' expert, in which monthly figures were used.

There was no evidence that the number of months in which Finch required greater than average care exceeded those in which Mrs. Finch was unable to care for him because of her hospitalization. Indeed, the jury apparently took Finch's estimate of twenty minutes a day as the time spent by his wife in assisting him and multiplied this figure by $2.50 per hour, the sum appellants' expert witness used as a value for the hourly rate for such services. (20 minutes

× 30 days = 10 hours per month × $2.50 = $25.00.) Although the jury's answer may not have been in the form contemplated by the issue, the total figure could easily be ascertained by a mathematical calculation. Consequently, no harmful error is shown.

■ In their final point, the Finches argue that the trial court committed reversible error in entering judgment in that the jury's answer to Special Issue No. 2 of $25.00 a month for nursing services was against the great weight and preponderance of the evidence. In order for appellants to prevail on this point, they must show that the finding is so against the great weight of the evidence presented at trial so as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1952). Upon review, we cannot substitute our judgment for the trier of fact simply because the evidence is conflicting or because we might have arrived at a different result than the jury. *Carter v. Carter,* 5 Tex. 93, 101–102 (1849); *Ryan v. Morgan Spear Associates,* 546 S.W.2d 678, 685 (Tex. Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *Mendoza v. Varon,* 563 S.W.2d 646 (Tex.Civ.App.—Dallas 1978, writ filed). In order to determine whether the jury's answer is against the great weight of the evidence, we must review that evidence.

Finch is a paraplegic as a result of an industrial accident sustained while working on an oil and gas drilling rig in October of 1969. He is now confined to a wheel chair and cannot walk. After a period of rehabilitation at the Caruth Rehabilitation Center, Finch returned to his home in July of 1970. He testified that he needed aid in dressing and undressing, the preparation of his clothes, taking a bath, fixing meals, changing his external catheter, exercising his legs, taking medication, and getting in and out of his car, all of which his wife did for him. He stated that although he could do some things for himself, it took him longer. He also testified that he could prepare his lunch provided all of the things he needed were placed where he could reach them. He testified that a fair estimate of the time she spent doing things she did not do before his injury was 20 minutes per day. Another witness for appellant, a registered nurse currently employed by the Texas Department of Public Welfare as a nurse consultant, testified that Finch was in need of nursing care and that the level of care required would possibly be a licensed vocational nurse or someone who had a basic understanding of nursing skills. She further testified that a minimum of $1,000.00 or $1,200.00 a month would pay for this nursing care. On cross examination, she admitted that a nurse's aid could perform these services provided she was trained to take care of the catheter and that the hourly charge for such a person was between $2.50 and $3.00 an hour. As we have already noted, if the figure of $2.50 per hour is applied to Finch's estimate of 20 minutes per day for his wife's time in rendering service not required before his injury, the result is $25.00 per month, the exact amount found by the jury.

This estimate is reasonable in view of the testimony concerning Finch's ability to care for himself. Appellee's witness, Larabee, a registered nurse employed by TEIA as a rehabilitation nurse, was assigned to Finch in the fall of 1969. It was her job to coordinate all phases of his rehabilitation. Although she spent much time with him while he was at Caruth and visited at his home on several occasions, she had not seen him during the period from June 8, 1973 to the present. She testified that after a period of training at Caruth, Finch was able to transfer from his wheelchair, in and out of a car and a bed. His discharge report from Caruth stated he was able to take care of all of his needs from a wheelchair; get on and off the bed from the wheelchair and transfer from the wheelchair on and off the commode and in and out of the bathtub. From this evidence, the jury could easily arrive at a figure of $25.00 a month as the value of the nursing care performed by Mrs. Finch. Accordingly, we cannot say that the award of $25.00 a month is against the great weight and preponderance of the evidence.

Affirmed.