ST. PAUL INSURANCE COMPANY, Appellant,

v.

Janis RAHN, Appellee,

and

Richard M. NOVIGROD, Appellant,

v.

ST. PAUL INSURANCE COMPANY, Appellee.

No. 1936.

Court of Appeals of Texas, Corpus Christi.

June 30, 1982.

Rehearing Denied Sept. 23, 1982.

Ann C. Livingston and Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, Richard G. Roth and Edmund K. Cyganeiwicz, Brownsville, for appellant.

Thomas G. Sharpe, Jr., Brownsville, for appellee.

Before NYE, C.J. and UTTER and KENNEDY, JJ.

## OPINION

KENNEDY, Justice.

This is a suit to enforce a consent judgment entered into between Janis Rahn, an appellee in this Court, and Richard M. Novigrod, an appellant, against St. Paul Insurance Company, which holds the position of appellant as to Rahn and appellee as to Novigrod. A detailed recitation of the background facts is necessary.

Richard Novigrod is the president and an executive officer of the Bazaar Corporation of Brownsville. The Bazaar Corporation owns a number of vehicles to which Mr. Novigrod has access. In October, 1976, these included a 1974 Chevrolet pickup truck which was insured by St. Paul. In early October, 1976, Mr. Novigrod left the pickup with a mechanic to have some work done on it. He was later notified by the mechanic that the truck was ready. Mr. Novigrod went to the garage in a 1971 Ford LTD automobile, another of Bazaar's vehi-

cles, planning to leave that car (coverage of which was not included in the policy here in issue) for repair and pick up the truck. Upon his arrival, he was informed that the Chevrolet truck required further attention. However, one of the owners of the garage supplied him with a Honda motorcycle to use in the interim.

Approximately one week later, on Sunday, October 10, Mr. Novigrod was involved in an accident while operating the motorcycle. The collision occurred when an automobile driven by Jose Gomez failed to yield the right of way. Riding on the motorcycle with Mr. Novigrod at the time of the accident was his friend, Janis Rahn, who sustained serious injuries. Ms. Rahn instituted suit against Gomez, and Bazaar Corporation and Mr. Novigrod, individually and jointly. Her claim against Gomez was settled. St. Paul was informed by Mr. Novigrod of the suit pending against him; however, St. Paul refused to provide him a defense.

On May 18, 1979, a consent judgment was signed wherein Bazaar Corporation and Mr. Novigrod agreed to the following:

1. Paying Ms. Rahn the sum of $4,700.00 as a full and final settlement of any claims against them;

2. Allowing Ms. Rahn to take a judgment against Bazaar Corporation in the amount of $650,000.00, with Ms. Rahn agreeing not to execute this judgment against the corporation's assets but only against its insurance carrier.

Ms. Rahn's amended pleadings sought $750,000.00 in damages from Novigrod and Bazaar Corporation. St. Paul filed a petition to intervene in the suit, accompanied by motions to set aside the judgment and for a new trial. The trial court allowed the motions to be filed, heard the motion to intervene and dismissed the motions. St. Paul appealed the denial of these motions to this Court but failed to properly perfect its appeal. The appeal was dismissed. 586 S.W.2d 701 (Tex.Civ.App.1979).

The instant suit was initiated by Ms. Rahn against St. Paul to enforce the consent judgment. St. Paul brought a third party claim against Novigrod for indemnity, to which Novigrod filed a counter-claim. Trial was to a jury. A judgment was entered whereby Ms. Rahn recovered $640,- 000.00 from St. Paul, and St. Paul and Novigrod each took nothing in their claims against each other. St. Paul is appellant herein concerning the judgment in favor of Ms. Rahn, and appellee regarding Novigrod's counter-claim. St. Paul has not appealed the take nothing judgment in its third party claim for indemnity against Novigrod. In other words, there are two appeals presently before us, each of which will be addressed separately.

The policy issued by St. Paul to Bazaar Corporation, the one here sued upon, expressly provided that injured parties to whom the insured becomes liable may proceed directly against the insurer for satisfaction so long as certain conditions are met. One such condition is that the liability of the insured must arise from a judgment after "actual trial" or from a written agreement to which the insurer, the insured, and the injured person are all party. It is St. Paul's position that the first judgment was not entered after an "actual trial"; therefore, liability cannot be established by Ms. Rahn.

Before the injured third party's right of action against the insurer arises, either the "actual trial" or the "written agreement" conditions must be met. *Great American Insurance Co. v. Murray,* 437 S.W.2d 264, 265 (Tex.1969). However, it is well settled that an insurer cannot insist upon compliance with the conditions of its policy under which it agrees to provide a defense and furnish liability coverage after it has been given the opportunity to defend and wrongfully refuses to do so. *Gulf Insurance Co. v. Parker Products, Inc.,* 498 S.W.2d 676, 679 (Tex.1973); *Womack v. Allstate Insurance Co.,* 156 Tex. 467, 296 S.W.2d 233, 236 (1957). However, in order to constitute such a waiver, the insurer's refusal to supply a defense when notified of the suit must be erroneous. *Gulf Insurance Co. v. Parker Products, Inc.,* supra.

■ An insurer's duty to defend its insured is determined by the allegations in the petition filed against the insured when considered in light of the policy provisions without reference to the truth or falsity of such allegations, and without reference to legal determinations thereof. *Argonaut Southwest Insurance Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973); *Heyden Newport Chemical Corp. v. Southern General Insurance Co.,* 387 S.W.2d 22, 24 (Tex.1965). The insurer, then, can make its decision with respect to the furnishing of a defense based wholly on the allegations contained in the pleadings filed against its insured. In her original petition against Novigrod, Rahn alleged that she was injured while a passenger upon a motorcycle *"owned* and operated by Richard Novigrod." (Emphasis supplied).

The policy provides coverage for two types of vehicles: "owned" vehicles and "temporary substitute" vehicles. An "owned" vehicle is defined by the policy as:

"An automobile which is owned by the named insured and described in the Schedule; or an automobile ownership of which is newly acquired by the named insured during the policy period, provided it replaces an owned vehicle as defined ... above...."

The policy continues:

" '[T]emporary substitute automobile' means an automobile *not owned by the named insured or any resident of the same household,* while temporarily used with the permission of the owner as a substitute for any owned automobile when withdrawn from normal use for servicing or repair because of its breakdown, loss or destruction...." (Emphasis supplied).

In ascertaining whether the allegation by Rahn in her suit against Novigrod that he "owned" the motorcycle indicates the existence of such facts as will give rise to a duty to furnish a defense, reference must be had to those allegations in light of the definitions given above. By the very definition of the term "temporary substitute automobile," it is apparent that the allegation in

Rahn's petition eliminates that as a potential area of liability. While the jury, in response to the only special issue submitted, determined that the motorcycle was, in fact, a "temporary substitute" as defined in the policy, that finding, made subsequent to the institution of the lawsuit by Rahn against Novigrod, had no bearing upon the allegations made in the suit based on which St. Paul was permitted to deny or extend coverage. *Argonaut Southwest Insurance Co. v. Maupin, supra; Heyden Newport Chemical Corp. v. Southern General Insurance Co., supra.*

We, therefore, must determine whether Rahn's petition indicates that the motorcycle might have been an "owned automobile" as the policy defines that term. It is perfectly obvious upon even a casual inspection of the policy that no motorcycle was included among the four vehicles described in the Schedule of Owned Vehicles attached to the policy. However, we are not prepared to say that the motorcycle might not have been an "owned" vehicle by virtue of it having replaced another vehicle listed in Schedule. It has been held that:

"Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is *potentially,* a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, *such doubt will be resolved in the insured's favor."* *Heyden Newport Chemical Corp. v. Southern General Insurance Co.,* supra, 387 S.W.2d at 26 (emphasis supplied); *Fort Worth Lloyds v. Garza,* 527 S.W.2d 195, 199 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.).

■ At the time the policy was issued, Bazaar Corporation was the only named insured. By endorsement six months prior to the accident, the policy was amended so as to include Richard Novigrod as a named

insured as well. It is St. Paul's contention, without citing us to any authority in support thereof, that a vehicle acquired by one named insured could not replace a vehicle owned by the other named insured. We fail to see the logic in this position. We hold, therefore, that the allegations in Rahn's petition stated a cause of action that could *potentially* have come within the coverage of the liability policy sufficient to compel the insurer to provide a defense, and that St. Paul's refusal to do so was wrongful. Insistence upon compliance with the policy provisions was waived, then, as a matter of law.

■ Ms. Rahn argues that St. Paul cannot collaterally attack the prior judgment. In her petition Ms. Rahn alleges that St. Paul is estopped under the doctrine of res judicata from asserting that it has no liability under the policy. *Abbott Laboratories v. Gravis,* 470 S.W.2d 639 (Tex.1971). The doctrine of res judicata bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former action as well as those which were actually tried. *Olivarez v. Broadway Hardware, Inc.,* 564 S.W.2d 195, 198 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Marange v. Marshall,* 402 S.W.2d 236, 239–40 (Tex.Civ. App.—Corpus Christi 1966, writ ref'd n.r.e.). It arises whenever there is an existing final judgment rendered upon the merits by a court of competent jurisdiction, upon a matter within its jurisdiction, and is conclusive of the rights of the parties in all other actions on the points at issue and adjudicated in the first suit.

In the present case, in order for us to determine whether St. Paul's assertion of "no actual trial" is barred by res judicata, we must look to the first case. The evidence in the first trial established that Ms. Rahn was a passenger on the insured Novigrod's vehicle when she was severely injured. At the outset, she was paralyzed with a broken back that required three separate surgical procedures. The evidence showed that her medical expenses exceeded $80,000. The doctors placed pins and rods in her back. A year later, she was able to walk with crutches and braces.

Also important are the pleadings in the first case. After the agreed judgment had been entered, St. Paul filed a Motion To Set Aside the Judgment and For a New Trial and a Motion to Intervene. In its motion to set aside judgment, St. Paul states:

"The judgment showed on its face that it is collusive and in fraud of the rights of the intervenor [St. Paul], *real party* in interest." (emphasis added)

In addition, St. Paul pleaded:

"There is no record of what, if any, evidence, was offered in support of the judgment, and in the absence of such a record, a new trial is essential to preserve the right to appeal."

These motions were denied by the trial court. Thereafter, St. Paul filed its notice of appeal and attempted to perfect an appeal. Its appeal was dismissed by this Court in *St. Paul Ins. Co. v. Rahn,* 586 S.W.2d 701 (Tex.Civ.App.—Corpus Christi 1979, no writ). St. Paul did not file an application for writ of error to the Supreme Court. Accordingly, the first judgment became final.

■ Since the judgment in the first case is a final judgment, St. Paul is bound by the doctrine of res judicata from asserting that there was "no actual trial" in the first case. This issue, whether or not there was an actual trial, was presented to the trial court by St. Paul in its motion for new trial in the first case. The trial court ruled adversely to St. Paul on this point, and the appeal was dismissed. Therefore, St. Paul's contention that there was "no actual trial" may not now be relitigated in the second phase of the lawsuit.

Since the question of wrongfully refusing to defend (once the facts are established or admitted) is a question of law and not fact, the learned trial judge was entitled to rely on this theory of waiver when he entered judgment for Ms. Rahn and against St. Paul. See *Blaylock v. American Guarantee Bank Liability Insurance Company,* 632 S.W.2d 719 (Tex.1982). It is the duty of this Court to construe policy exceptions nar-

rowly and in favor of the insured. *Blaylock v. American Guarantee Bank Liability Insurance Company,* supra; *Ramsay v. Maryland American General Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976).

The judgment of the trial court as to Ms. Rahn is AFFIRMED.

We next address ourselves to Novigrod's appeal from the trial court's rendition of a take nothing judgment in his claim against St. Paul for damages resulting from its refusal to defend. In a letter to the attorneys in the case, the trial judge explained his actions in denying Novigrod relief as follows: Since the primary obligation to defend and pay damages fell upon the insurer of the motorcycle, St. Paul's obligation was that of an excess carrier. In other words, being only secondarily liable, St. Paul had no duty to defend. This clearly implies that St. Paul's refusal to defend was not erroneous. We note that if this were the case, Ms. Rahn should also have been precluded from recovery in her suit to enforce the consent judgment as a matter of law. However, we are of the opinion that the learned trial judge erred in refusing to submit Novigrod's requested special issues and denying him the relief sought on this basis.

The issue of the effect of the existence of other insurance, or primary versus secondary coverage, is, as aptly noted by the trial judge, "perhaps the most troubling and the most difficult to rationalize." It is St. Paul's position that the provisions of its policy, making coverage with respect to temporary substitute vehicles "excess insurance over any other valid and collectible insurance available to the insured," relieved it of a duty to furnish a defense if Novigrod was covered by a policy in effect at the time of the accident, which had been issued to the owner of the motorcycle. The evidence clearly showed the existence of a policy covering the motorcycle which had been issued by Southern County Mutual Insurance Company, which provides coverage for "[a]ny other person while using an owned automobile . . . with the permission of the named insured." (Without address-

ing the point, we find it interesting that St. Paul, in one of its points of error as appellant, attacks the jury's finding that the motorcycle was a temporary substitute vehicle on the ground that the evidence was insufficient to show that Novigrod was operating the vehicle with the permission of its owner, while at the same time contending that the above quoted clause from the Southern County Mutual policy inures to its benefit.) There is no evidence that a request was ever made of Southern County Mutual to defend the suit, although that company did conduct an investigation of the accident. The evidence firmly established that St. Paul was aware of the Southern County Mutual policy, but the testimony as to whether St. Paul informed Novigrod of its existence is conflicting. St. Paul never gave Novigrod an explanation for its refusal to defend.

We are not of the opinion that the existence of other insurance relieved St. Paul of its duty to furnish a defense. As previously discussed, that determination is governed by the allegations contained in the petition filed against Novigrod without reference to extraneous facts. This obligation is not affected by facts ascertained before suit, or developed during the litigation process. *International Service Insurance Co. v. Boll,* 392 S.W.2d 158, 160 (Tex. Civ.App.—Houston 1965, writ ref'd n.r.e.). Knowledge on the part of the insurer of the existence of other insurance is in no way apropos to the allegations made in the suit pending against its insured, and cannot, therefore, alter the duty ordained thereby.

St. Paul cites us to the cases of *National Farmers Union Property & Casualty Co. v. Farmers Insurance Group,* 14 Utah 2d 89, 377 P.2d 786 (1963), and *General Accident Assurance Corp. v. Motorists Mutual Insurance Co.,* 2 Ohio App.2d 234, 207 N.E.2d 670 (1965), for the proposition that an excess insurer who does defend when a primary insurer fails to do so is entitled to recover the costs of defense from the latter. We cannot agree that this right is tantamount to the right to simply refuse the insured a defense. To so hold would contravene the

spirit of the law of this State that the rights of the insured are favored. See *Hardware Dealers Mutual Fire Insurance Co. v. Farmers Insurance Exchange,* 444 S.W.2d 583, 589 (Tex.1969). St. Paul had available to it various procedures, i.e., the filing of a declaratory judgment action, for determining its duty to defend. St. Paul chose instead, however, to send its insured, standing hat in hand at its door, packing. Under these circumstances, we do not believe that this was an option available to it without the most severe ramifications.

■ St. Paul contends that the action of the trial court was correct since there was no showing that the amount of the consent judgment was reasonable and agreed to in good faith. We find the case of *Ranger Insurance Co. v. Rogers,* 530 S.W.2d 162 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.) to be determinative of this issue. In *Ranger,* suit had been filed against the estate of the pilot by the survivors of a passenger killed in an airplane accident. The administrator of the estate notified the plane's insurer and requested it to furnish a defense. The insurer refused, taking the position that there was no coverage of the crash by the terms of the policy. Thereafter, a consent judgment was entered into by the survivors and representatives of the estate, and suit was brought against the insurer for enforcement thereof. The jury found that the exclusionary provisions of the policy relied upon by the insurer were inapplicable, and judgment was entered for the plaintiffs. The Court, in an extremely well-articulated opinion, held as follows:

> "With respect to appellant's relationship to the consent judgment, it should be observed that appellant had contracted to pay on behalf of the insured all sums which the insured '. . . shall be legally obligated to pay as damages because of . . . death . . . sustained by any person . . . caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft.' Appellant had notice of the suit filed in the United States District Court in El Paso. In fact, counsel for the Rogers Estate had tendered the defense

of that suit to appellant. Had appellant accepted the defense, it would have had, of course, the opportunity to conduct the defense in the manner most likely to have defeated the plaintiffs' claim or at least to have reduced the amount of the damages. Appellant would accept the defense of the case only with a 'reservation-of-rights' agreement. The administrator of the Rogers Estate and United Housing Corporation were not obligated to accept appellant's effort to limit its responsibility under the contract of insurance, and they ultimately settled the case and obtained the consent judgment. Under these circumstances appellant will not be regarded as a stranger to the consent judgment. *American Fidelity & Casualty Co. v. Williams,* 34 S.W.2d 396, 402 (Tex. Civ.App.1930, writ ref'd).

Having determined that appellant was not a stranger to the consent judgment, we are of the opinion that the rules with respect to collateral attack are applicable to appellant. A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose. *Crawford v. McDonald,* 88 Tex. 626, 33 S.W. 325 (Tex.1895). To the contrary, a direct attack on a judgment is an attempt to change that judgment in a proceeding brought for that specific purpose, such as an appeal or a bill of review. *Crawford v. McDonald,* supra. The grounds upon which a collateral attack may be successful are that the court rendering judgment has: (1) no jurisdiction of the person of a party, or his property, (2) no jurisdiction of the subject matter of the suit, (3) no jurisdiction to enter the particular judgment entered, or (4) no capacity to act as a court. *Austin Independent School District v. Sierra Club,* 495 S.W.2d 878 (Tex.1973). 41 Texas L.Rev. 163, 164, supra.

The grounds of appellant's attack on the consent judgment were none of the above, but instead were that the consent judgment was obtained by fraud and the amount of the judgment was unreasonable. Appellant did not request the submission of issues inquiring into fraud in

the procurement of the consent judgment. Even had appellant obtained the submission of those issues, and even had it obtained favorable answers to those issues, judgment non obstante veredicto nevertheless would have been proper since under those circumstances the judgment of the United States District Court would not have been subject to collateral attack. [Citations omitted.] Had appellant assumed the burden of requesting an issue ... inquiring of the reasonableness of the consent judgment, and had appellant obtained an affirmative finding to such issue, judgment non obstante veredicto would have been proper for the same reason." 530 S.W.2d at 167.

Having erroneously refused coverage, St. Paul cannot now attack the reasonableness of the consent judgment. It appears that the trial court's refusal to allow Novigrod to submit his theories of recovery to the jury was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment, and we reverse and remand the judgment insofar as it decrees that he take nothing. T.R.C.P. 434.

In his thirty-first and thirty-second points of error, Novigrod complains, respectively, that the trial court erred in denying his motion for production of certain reports, and in sustaining objections to the proffered testimony of an expert witness. In the event of a new trial, a swift disposition of the case will be better accomplished if we pass on these questions at this juncture.

The items sought by Novigrod's motion to produce, made pursuant to Rule 167, were reports relating to the investigation of the accident prepared by the agents and employees of St. Paul. The trial judge ordered said documents to be delivered to him for an in camera examination. After his review of the documents delivered, he ruled that nothing was contained therein which was subject to production. We do not agree.

We believe that Novigrod has shown good cause for the production of the materials sought. *Allen v. Humphreys*, 559 S.W.2d 798, 801 (Tex.1977). The privilege against discovery concerning this type matter provided for in Rule 167 can be invoked only when the documents sought to be protected were prepared in connection with the prosecution or defense of the lawsuit in which the discovery is sought. Id. at 803. The materials here sought were not prepared in connection with the instant suit, but rather in connection with Ms. Rahn's claim against Novigrod. This being the case, the privilege afforded by Rule 167[1] is not available.

St. Paul insists that a showing must also have been made by Novigrod that the evidence of the items sought could not have been developed by other testimony. *Finch v. T.E.I.A.*, 564 S.W.2d 807, 809 (Tex.Civ. App.—Dallas 1978, writ ref'd n.r.e.). In that case, however, the Court had already determined that the memoranda there in issue were discoverable, and the additional burden here urged by St. Paul was employed as a guideline for determining whether reversible error had been committed. Having already held that to be the case here on different points of error, we see no reason for applying the *Finch* test, and sustain Novigrod's thirty-first point of error.

Appellant's final point of error asserts that the trial court erred in sustaining objections to the proffered testimony of his expert witness, Mr. Joe Westheimer. In a bill of exceptions we have before us Mr. Westheimer's opinion testimony to the effect that the motorcycle was a substitute vehicle under the terms of the policy, and that St. Paul had a duty to investigate the accident and to inform Novigrod of the existence of any other insurance that came to the attention of St. Paul which might have provided him coverage. We believe that the trial court ruled correctly in excluding this testimony.

1. Our discussion of Rule 167 concerns that rule as it existed at the time of trial, prior to its amendment effective January 1, 1981.

The coverage afforded by an insurance policy is not an area subject to interpretation by expert witnesses. *Texas Lloyds v. Laird,* 209 S.W.2d 937, 940 (Tex. Civ.App.—Galveston 1948, writ dism'd). See 2 Ray *Texas Practice: Law of Evidence,* § 1425, p. 25. Additionally, whether or not a legal duty exists under a given set of facts and circumstances is a question of law for the court. *Adams v. Morris,* 584 S.W.2d 712, 716 (Tex.Civ.App.—Tyler 1979, no writ); *Jackson v. Associated Developers of Lubbock,* 581 S.W.2d 208, 212 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). Thus, we do not believe that any of the expert's opinions sought to be elicited would have been properly admitted. Appellant's thirty-second point of error is overruled.

The judgment of the trial court is AFFIRMED as to Ms. Rahn and REVERSED AND REMANDED as to Richard Novigrod. The costs on appeal are assessed against St. Paul.