**GULF OIL CORPORATION, Appellant,**

v.

**T.E. CROW, Appellee.**

**No. 13–85–019–CV.**

Court of Appeals of Texas,
Corpus Christi.

Dec. 12, 1985.

Rehearing Denied Jan. 30, 1986.

Robert R. Case, Johnson & Davis, Harlingen, for appellant.

E.R. Fleuriet, Wiley, Hale & Fleuriet, Harlingen, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

Gulf Oil Corporation appeals from a judgment granted in favor of its consignee, T.E. Crow. Based upon the jury's answers to special issues, the trial court granted a take nothing judgment on Gulf's claim against Crow and a $412,000 judgment for Crow on his counterclaim against Gulf. We reverse the judgment of the trial court as to the take nothing judgment on Gulf's claim and also reverse the judgment of the trial court on Crow's counterclaim against Gulf.

Gulf brought suit against Crow pursuant to a wholesale consignment agreement executed by the parties on February 21, 1972. Gulf claimed that Crow: 1) failed to account for missing gasoline in his possession; 2) converted the missing gasoline to his own use and; 3) breached his duty to use due care in preserving and maintaining property entrusted to him under the contract. Gulf also contended that Crow had fraudulently prepared reports showing gasoline receipts that he knew were incorrect.

Crow counterclaimed alleging that Gulf's failure to notify him of the discrepancies in reports prepared by Gulf was negligent and that Gulf breached an implied covenant of good faith and fair dealing. Crow also claimed that Gulf breached their contract and that he suffered destruction of his business and livelihood and attendant mental anguish based upon Gulf's gross negligence.

The facts show that Crow began to work for Gulf in 1964. In 1972, they entered into the consignment agreement in question. At first, Crow picked up Gulf's gasoline at the Port of Harlingen and delivered it to his customers. In 1981, Gulf activated a bulk plant storage facility and placed Crow in charge of this plant and the gasoline. Crow never had this responsibility before. Gulf made modifications to the piping and tank facilities as part of activating the bulk plant. About that time, Crow began to order gasoline from Gulf's office in Corpus Christi. Gulf arranged for Coastal Transport Company to transport the gasoline to the bulk facility in Harlingen. Deliveries were made to the bulk plant both during working hours, as well as evenings at Gulf's request. Sometimes Crow's employees would check the delivery trucks to insure that delivery had actually been made and at other times they would not.

In December 1981, shortly after Crow took over the bulk plant facility, Gulf made an on-site audit of the Harlingen plant. The auditor determined that Crow was short three hundred and forty-six gallons of Good Gulf Gasoline and fifty-five gallons of Gulfcrest Gasoline. The auditor testified however, that had he been given a delivery document dated December 8, 1981, the loss of Good Gulf gasoline would have been increased to 9,095 gallons. In March 1982, a Gulf employee discovered further discrepancies between their ledger and Crow's stock report and tried to call Crow. Apparently, four receipts of gasoline had not been posted on the February stock report. However, Crow had gone on vacation during this period.

In April, another Gulf employee called Crow to tell him that there was a problem with the reports that Crow was sending them. The missing receipts for February and March were not received with the April stock report. In June 1982, Gulf's terminal supervisor was sent to Harlingen to check for missing documents. The supervisor determined that the book inventory of Good Gulf was 65,103 gallons but that the physical inventory was only 8,242. He determined that the book inventory of Gulfcrest was 35,040 gallons and the physical inventory was only 5,478 gallons. As a result of these findings, the plant was closed. On June 7, 1982, the field auditor discovered additional losses from those discovered on June 3rd. The last audit showed a total shortage of 131,658 gallons of gasoline.

■ In Gulf's third point of error it claims that there was factually insufficient evidence to support the jury's finding that Gulf's negligent acts or omissions were the cause of 80% of its damages.

The relationship between the parties arose from the wholesale consignment agreement. Under the contract, Gulf owed a duty to pay Crow commissions from the gasoline sold and accounted for. This portion of the agreement reads, in pertinent part:

As soon as practical after the first day of each month, Consignor shall remit to Cosignee the net commissions earned as shown on consignee's monthly statements, provided, however, adjustments in the amount of such commissions, following an audit thereof by consignor, shall be made in subsequent monthly commission payments.

Crow claimed that Gulf had a duty based upon both the contract and their course of dealing to notify Crow of existing problems and, as such, he relied exclusively upon Gulf to give him notice of any problems. The written agreement between the parties, on the other hand, required Crow to mail to Gulf a statement showing sales and deliveries that were made by him and contemporaneously remit all monies received. On the last day of each month, Crow was required to submit to Gulf a detailed statement of sales and deliveries that he made

during the month, net commissions thereon, and stock and containers on hand. *The agreement required Crow to be responsible for all shortages of stock.* (Emphasis supplied.) The details of the management and control of the business, according to the contract, were left entirely to the discretion of Crow. The evidence did show that Gulf made arrangement for the delivery of some of the gasoline and, in this respect, had some control over this part of Crow's business.

Crow asserted in his counterclaim that Gulf negligently failed to reconcile his reports which were sent to Gulf by Crow. He testified that he relied totally upon Gulf to act as troubleshooter. Gulf's stock accounting department received documents which showed independently the delivery of gasoline to Crow. Crow was required to submit folios upon which he reported sales and a stock report which was supposed to show physical inventory. A stock ledger was prepared by Gulf from this combined information. Two copies were produced. One copy was sent to the consignee (Crow); the other was retained by Gulf's stock accounting department. Crow claims he did not receive these ledger copies.

Crow urged at trial that Gulf was negligent in reconciling these reports. He claimed that Gulf's field auditor was also negligent because he audited Crow without first obtaining the information that Gulf had in its possession regarding sales and deliveries. Crow contended secondly that Gulf was negligent in providing facilities that were improper.

According to the written contract, Gulf had no affirmative duty to reconcile reports for Crow. If a duty did arise because of Gulf's practice of reconciling reports and notifying Crow of problems, we find from the evidence that any negligence in reconciling the reports was not the proximate cause of either party's damages. Gulf's conduct may have contributed to the failure of Crow to discover the loss when it first began to appear.

The evidence clearly shows that Gulf had independent information from the carrier that deliveries were being made to Crow.

However, Crow was responsible for taking a continuous physical inventory of the gasoline on his premises. This was generally accomplished by physically placing a stick with a graduated scale into the tanks to gauge and determine the amount of gasoline on hand. Crow testified that he had not been taught how to fill out a stock report until December 1981, when Childs, one of the auditors, showed him. Crow admitted that he continued to do the reports erroneously as he had done prior to December 1981, even after being taught how to do them properly. We find that Gulf had no duty to ascertain whether Crow was giving them accurate information on his stock reports. Crow admitted on cross-examination that, if he had gauged the tanks and checked on deliveries, he would have known that he was short gasoline. We find that the total losses should have been mitigated if the questioned discrepancies had been discovered earlier, but there is insufficient evidence to show that Gulf's failure to realize that Crow was completing stock reports improperly and failing to include delivery tickets on his stock reports as well as promptly notifying him of discrepancies caused the loss of gasoline. Appellant's third point of error is sustained.

The case went to the jury on both Gulf's claims for affirmative relief and Crow's counterclaim. The jury found, with regard to Gulf's claims, that Crow had failed to return or account for 82,562 gallons of Good Gulf gasoline and 43,693 gallons of Gulf Crest. They also found that Crow had made fraudulent representations to Gulf regarding the actual quantity of gasoline on hand. The jury assessed Gulf's damages at $140,501.97. They also found that Crow failed to protect Gulf's gasoline from loss, that this omission was negligence and proximately caused $140,501.97 damages to Gulf. However, they found that Gulf's acts or omissions caused 80% of its damages and Crow's acts or omissions caused 20% of its damages.

Special issues were also submitted on Crow's counterclaim. The jury found that there were negligent and grossly negligent

acts or omissions by Gulf's managerial employees that proximately caused damages to Crow. They also found that there were negligent acts or omissions by Gulf which caused its own damages. They found that Gulf was 80% negligent and Crow was 20% negligent.

Gulf argues that the comparative negligence issue is inapplicable to its cause of action for fraud and should be disregarded. It cites us to several cases which hold that contributory negligence is not a defense to a suit based on fraud. It contends that the jury implicitly found the causal connection between the fraudulent misrepresentation and damages because the trial court instructed the jury that fraudulent conduct meant that the party relied upon the conduct and thereby suffered injury, which, it says amounts to a finding of causation. We disagree. The elements of actionable fraud in Texas were restated by the Supreme Court in *Trenholm v. Ratcliff*, 646 S.W.2d 927 (Tex.1983) as follows:

(1) that a material representation was made;

(2) that it was false;

(3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth as a positive assertion;

(4) that he made it with the intention that it should be acted upon by the party;

(5) that the party acted in reliance upon it; and

(6) that he thereby suffered injury.

These were essentially the elements that the court asked the jury in an instruction to consider as fraudulent conduct.

A trial court should submit to the jury any group of facts which are supported by the evidence and control the disposition of the case. *First State Bank, Morton v. Chesshir*, 634 S.W.2d 742 (Tex. App.—Amarillo 1982, writ ref'd n.r.e.), TEX.R.CIV.P. 277. The only function of an explanatory instruction in a charge is to aid and assist the jury in ascertaining issues submitted by the court. *Rendon v. Texas Employers' Insurance Ass'n*, 599

S.W.2d 890 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.).

In the case at bar, an issue should have been submitted inquiring whether the alleged fraudulent misrepresentations of Gulf caused the damages that Gulf had suffered. This was a controlling issue raised by the evidence. Instructions are a means by which the jury is aided in answering special issues. They do not supply the means by which a missing element in a cause of action may be provided. Here, an issue on causation was necessary. Merely giving the jury a definition of fraudulent conduct cannot supply a finding of causation. The defect in the charge was specifically pointed out to Gulf by Crow. However, Gulf did not request the causation issue. Appellant's first point of error is overruled.

In appellant's second point of error, it urges it was entitled to attorney's fees and the jury's answers to special issues were against the great weight and preponderance of the evidence. We agree.

The jury found that the attorneys were entitled to nothing for services rendered in this cause, although the testimony of Robert Case, attorney for Gulf, clearly proved up attorney fees for his work on behalf of Gulf. There was also testimony by another local attorney who testified to a reasonable fee for the work involved by Gulf. We find that there was ample evidence to show that Gulf's attorneys performed services for their client in pursuing the case, for which they would be entitled to a fee. We express no opinion as to the reasonableness of the fees testified to by the attorney, but we do hold that a finding that no amount of fees was reasonable is against the great weight and preponderance of the evidence. Appellant's second point of error is sustained.

Appellant asserts in its fourth point of error that the trial court erred in overruling their objection to the submission of the negligence issues because it assumes the existence of negligence and does not limit the jury's consideration to those alleg-

edly negligent acts or omissions which were properly pleaded and supported by the evidence. At trial, Gulf objected to the submission of that special issue on the ground that there were no pleadings to support the issue. We find that Gulf has waived its complaint as contained in point of error number four because it did not specifically object to the issue at trial. *See* TEX.R.CIV.P. 274, 279; *Texas Employers' Insurance Ass'n. v. Neuman*, 379 S.W.2d 295 (Tex.1964); *George Pharis Chevrolet, Inc. v. Polk*, 661 S.W.2d 314 (Tex.App.— Houston [1st Dist.] 1983, no writ.). Regardless, the wording of the issue asks: [D]o you find *any* negligent act or omission by Gulf employees that was a proximate cause of *any* damages which Gulf is claiming. The word *any* sufficiently qualifies the issue so that it does not assume negligent conduct on the part of Gulf. Gulf also argued that the special issue did not specify which of Gulf's acts or omissions the jury was to consider in answering the issue. Again, we find that a broad submission of special issues is acceptable. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex. 1981). There was no claim of variance between the pleadings and proof at trial and such claim may not now be raised. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931 (Tex.1980).

Appellant argues in its fifth point of error that the trial court erred in overruling their objection to the submission of the special issue which asked the jury to find the percentage of *causation* attributable to each party. Gulf argues that the issue is phrased in terms of comparative causation which is applicable in only products liability cases under *Duncan v. Cessna*, 665 S.W.2d 414 (Tex.1984), and is improper in this type of case. Crow argues that because one of the predicating issues was not a negligence issue, an issue inquiring into negligence attributable to each party would not have been proper. The wording of the special issue does not inquire as to whose negligence, if any, proximately caused damage to Gulf, but asks if any acts or omissions by either party *caused damage*. We agree with Crow that the issue should not have inquired as to

negligence because one of the predicting issues concerns deliberate acts on the part of Crow to conceal rather than an act of negligence. We believe the better way to submit this issue would have been to inquire as to comparative fault regarding the negligence causes of action only. However, the trial court has considerable discretion in submitting the controlling issues and under these circumstances we do not believe the submission of this issue was reversible error. In any event, the retrial of this case may present different issues not here discussed. Appellant's fifth point of error is overruled.

In appellant's sixth point, it argues that the trial court erred in refusing to submit the question of Crow's contributory negligence to the jury in the form which they requested. Its requested issue made eleven distinct inquiries concerning Crow's contributory negligence. The trial court instead submitted a broad issue inquiring whether any negligent act or omission by Crow was the proximate cause of any damages to him. We hold that the trial court did not abuse its discretion in this regard. TEX.R.CIV.P. 277, *See De Anda v. Home Ins. Co.*, 618 S.W.2d 529 (Tex.1980), *Baker Marine Corp. v. Moseley*, 645 S.W.2d 486 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Appellant's sixth point of error is overruled.

In appellant's seventh through eleventh points of error Gulf complains of the jury's findings that the negligence of Gulf managerial employees was a proximate cause of damages to Crow. The jury also found that Gulf managerial employees were grossly negligent. It argues that there was no duty, no evidence or insufficient evidence of negligence and no evidence of proximate cause to submit either the negligence or gross negligence issues.

The evidence shows that as a result of the unexplained missing gasoline, Gulf shut the bulk plant down. Crow worked for Gulf for a number of years and was suddenly without a job. The testimony was that he began worrying, started smoking again and was unable to sleep.

There seems to be no dispute that Crow suffered some injury to his life and livelihood when Gulf shut the plant down. However, we do not agree from the record before us that any specific negligent act or omission on Gulf's part proximately caused the injuries complained of. Even if Gulf forced Crow to submit proper reports and had reconciled the reports sooner, Gulf did not cause the loss of gasoline. The fact that it was Gulf who actually shut down Crow's operation again was not negligent considering the fact that it was losing gasoline from the plant.

 We similarly sustain the point of error concerning gross negligence. Gross negligence is that entire want of care which would raise a belief that an act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons affected by it. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex.1981). In other words, the focus is on the mental attitude of the person charged and whether acts or omissions by that person display a conscious and deliberate disregard for the safety of others. *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex. 1985). We have determined from all of the record that there is insufficient evidence that Gulf was negligent in closing the plant. Therefore, we similarly sustain these points of error.

 In appellant's twelfth point of error, it argues that the trial court erred in failing to submit a special issue regarding Gulf's duty to reconcile and report on the stock reports. Appellant's objection to this issue is, as follows:

> We further object to the submission of the issues in general because we feel that there is a, the court has omitted a necessary issue in that there is no issue which would ask the jury whether Gulf assumed any duty to timely reconcile and report on the stock report submitted to Gulf by Crow.

Appellant claims that assumption of a duty was an essential element of Crow's cause of action. Because Gulf complains that the omitted issue was part of Crow's cause of action, it needed only to object and point out specifically the problem to the trial court. However, we find that the issue of whether a duty exists is a question of law to be determined by the court. *St. Paul Insurance Co. v. Rahn*, 641 S.W.2d 276 (Tex.App.—Corpus Christi 1982, no writ); *Webb v. City of Lubbock*, 380 S.W.2d 135 (Tex.Civ.App.—Amarillo 1964, writ ref'd n.r.e.). Here, we find that the trial court did not err in refusing to submit the issue regarding duty. Appellant's twelfth point of error is overruled.

In appellant's thirteenth point of error, it asserts that the trial court erred in submitting Special Issue No. 20 because it assumes the existence of negligence and does not limit the jury's consideration of acts or omissions which were properly pleaded and supported by the evidence. We considered the same arguments with regard to the general negligence issues and find that the same authorities cited are dispositive of this point as well. Appellant's thirteenth point of error is overruled.

 In appellant's twentieth through twenty-second points of error, it argues that the trial court erred in excluding Crow's testimony concerning an outstanding agreed judgment in favor of Valley Petroleum Distributors, Inc., Crow's testimony concerning an account owed to Gulf for goods other than gasoline and testimony concerning a number of insufficient fund checks given by him to Gulf. In order to reverse on these grounds, we must determine that the exclusion of this evidence was reasonably calculated and probably did cause the rendition of an improper verdict. TEX.R.CIV.P. 434. We find that the evidence concerning the judgment between Crow and Valley Petroleum was inadmissible and irrelevant to the case at bar. *See Swinney v. Winters*, 532 S.W.2d 396 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.). The testimony concerning insufficient checks and an account for items other than gasoline is also not directly relevant to the case at bar, but is merely evidence of an independent transaction which does not tend to illuminate any issue in the instant case. *See Irwin v. Par-Oil*

*Well Servicing Co.,* 349 S.W.2d 277 (Tex. Civ.App.—Texarkana 1961, writ ref'd n.r. e.). Points of error twenty, twenty-one and twenty-two are overruled.

In appellant's fifteenth through nineteenth points of error, it complains of the jury's award of mental anguish and exemplary damages. Having previously ruled on all appellant's controlling issues, it is not necessary for us to address these issues. TEX.R.CIV.P. 451.

■■■■ In summary, we have determined that there is error in this case that requires a new trial. We may also remand the entire case, even if an appealing party might be entitled to a judgment of rendition when a case has not been fully developed, or when a remand would better serve the interest of justice. *See United States Fire Insurance Co. v. Carter,* 473 S.W.2d 2 (Tex.1971). Here, the record reflects that evidence concerning the claim and counterclaim are virtually impossible to separate, so the interest of justice would best be served by a retrial of all issues affecting both parties.

The judgment of the trial court is REVERSED, and the cause is REMANDED for a new trial.

### OPINION ON MOTION FOR REHEARING

■■■■ On motion for rehearing, Crow argues that this Court erred in holding that Gulf had no duty to Crow under the circumstances to timely audit and report back to him any discrepancies. In our opinion, we held only that Gulf had no duty to ascertain whether Crow was giving Gulf accurate information on the stock reports that he completed. We found only that the evidence in the record was insufficient to show that any negligence on Gulf's part was the cause of 80% of its damages.

■■■■ Crow also argues that this Court erred in not applying the objective test for gross negligence. Our opinion states that the evidence was insufficient to establish negligence and that any specific acts or omissions on Gulf's part caused the injuries complained of. Therefore, Gulf's conduct could not rise to the level necessary to establish gross negligence.

■■■■ The evidence was insufficient to show either that Gulf had actual subjective knowledge that their conduct created an extreme degree of risk or that under the circumstances a reasonable person would have realized that their conduct created an extreme degree of risk to the safety of others.

The motion for rehearing is overruled.