339 So.2d 60 (1976)
Ernest M. GRAHAM
v.
The CITY OF KOSCIUSKO, Mississippi, and United States Fidelity and Guaranty Company.
No. 48848.
Supreme Court of Mississippi.
November 16, 1976.
Crawley & Ford, David E. Crawley, Jr., William R. Ford, Kosciusko, for appellant.
Brooks & Guyton, William D. Brooks, John D. Guyton, Kosciusko, for appellee.
Before GILLESPIE, C.J., and ROBERTSON and LEE, JJ.
*61 ROBERTSON, Justice, for the Court:
This is a workmen's compensation case. The question presented for decision is one of first impression in Mississippi.
The claimant and appellant, Ernest M. Graham, appeals from the order of the Circuit Court of Attala County reversing an order of the Workmen's Compensation Commission which approved an award of $60,347.15 to Mary M. Graham, his wife, for nursing services rendered in the home from July 8, 1964 through December 18, 1973.
The circuit court found that no notice of the necessity for nursing services and no request for such services were given to the employer, City of Kosciusko, or the carrier, United States Fidelity and Guaranty Company, until February 23, 1972, and that payment for such nursing services should not begin until February 23, 1972. The court further found that the overwhelming weight of the evidence was that only four hours nursing services per day were needed by the claimant, and that claimant's wife was entitled to payment for four hours nursing services per day at $2.25 per hour for each day from and after February 23, 1972, less a period of sixteen days when claimant was hospitalized.
On July 8, 1964, claimant suffered an industrial accident while working as an electrical lineman for the city of Kosciusko. He was left a paraplegic, paralyzed from the waist down. The first request for nursing services was made by letter, dated February 23, 1972, from Crawley and Ford, claimant's attorneys, to United States Fidelity & Guaranty Company, Greenwood, Mississippi. That letter stated:
 Attention: Mr. Jack Toler
 Re: Mr. Ernest Graham, Ethel, Mississippi v. City
 of Kosciusko, Employer, and U.S. Fidelity &
 Guaranty Co., Carrier
Dear Jack:
You will please find attached hereto a copy of a letter which has just been delivered to us by Mrs. Mary Graham, wife of Mr. Ernest Graham, above named whom we represent, dated 22 February, 1972, signed by Dr. Charles L. Neill, Neurosurgeon of Jackson, Mississippi, which is self-explanatory.
Mrs. Graham has just advised us that it is going to be absolutely necessary for either one of two things to be done with reference to the care of the physical needs of her husband. They are (1) employ an LPN for at least one 8 hour shift every day or, (2) pay her for her services in rendering and caring for her husband's physical needs because of his paraplegic condition.
We have checked and determined that the local rate charged by an LPN is $1.50 per hour, or $12.00 for an 8 hour shift. This would amount to an average of approximately $362.00 per month. Mrs. Graham has authorized us to advise that she is willing to accept the sum of $250.00 per month in lieu of your employing and paying an LPN.
In view of the above, we are hereby formally requesting that you initiate the immediate payment to Mrs. Graham of $250.00 per month for her services under the statutory obligation you have for the furnishing of necessary medical care and paying necessary medical expenses.
Please advise.
.....
DOCTORS NEILL, NEILL AND HODGES
 Neurological Surgery
 Suite 214 Medical Arts Building
 Jackson, Mississippi 39201
 February 22, 1972
TO WHOM IT MAY CONCERN
 RE: Mr. Ernest Graham
Because Mr. Ernest Graham has been paraplegic since his accident in 1964, Mrs. Graham's time has been fully occupied with his nursing care and attention over the past several years.
This nursing care will continue as a responsibility. Mrs. Graham is unable to do any outside gainful employment because *62 of the demanding responsibility of Mr. Graham's condition.
SIGNED:
/s/ Charles L. Neill, M.D.
Charles L. Neill, M.D.
On June 19, 1972, Graham filed his first petition to be furnished nursing services. In his petition claimant stated that the carrier had paid him the workmen's compensation benefits to which he was entitled and that the carrier was paying his doctors' and drug expenses in accordance with the workmen's compensation act.
Claimant then stated in his petition:
"3. Your said claimant would further show unto this Honorable Commission that he has called upon the said United States Fidelity & Guaranty Company, carrier herein named, to also furnish him with the attendance of at least a licensed practical nurse for a period of time not less than eight (8) hours per day for the reason that his physical condition has deteriorated to that point where he is in absolute medical need thereof inasmuch as he is completely paralyzed from his waist down and without any physical control whatsoever over that part of his body and the physical functions of his urinary and bowel tracts." (Emphasis added).
Claimant closed his petition with the prayer that the carrier:
"[W]ill be ordered and directed to either furnish your said claimant with the nursing care his condition requires or that it pay unto his wife, Mrs. Mary Graham, the sum of $392.87 per month for her services so rendered."
The petition uses only the present and future tenses; nowhere does it request payment for past nursing services or for services prior to February 23, 1972. The first hearing was on August 7, 1972, and at this and all subsequent hearings the testimony adduced was as to present and future nursing needs.
On January 30, 1973, the attorney-referee rendered his opinion. He found that the employer and carrier should pay to claimant's wife:
"[F]or her tending to, caring for and being present with claimant, in lieu of special nursing attention, not to exceed sixteen (16) hours per day for the period commencing July 8, 1964, until September 12, 1972, the date of his surgery by Dr. W.H. Merrell, and, further, not to exceed eight (8) hours per day from and after September 12, 1972, all at the rate of the average weekly wage paid to licensed practical nurses, provided, however, that the defendants shall not be liable for such expenses, as ordered herein, during the periods from and after July 8, 1964, when claimant was and is confined to a hospital or other such place where he may receive active nurse's care;..."
Upon review by the full Commission, the Commission by a two-to-one vote affirmed the order of the attorney-referee, but remanded the cause to the attorney-referee:
"[F]or a hearing to obtain evidence so as to allow his entering a supplemental order making more specific the Attorney Referee Order of January 30, 1973, including, but limited to, the following matters:
1. The rate of pay and the specific number of hours for which payment is to be made for nursing services commencing July 8, 1964, and ending on the date prior to the Attorney Referee hearing to be held in this cause, thereby establishing a total dollar amount due the wife of the claimant herein for her providing of nursing services from the date of July 8, 1964, through the day prior to the date of the next hearing in this cause. The maximum number of hours per day shall be limited to that set out in the Attorney Referee Order of January 30, 1973.
2. The rate of pay which shall be paid to the wife of the claimant herein for the providing of nursing services from the date of the next hearing of this cause; such rate of pay shall be based upon the gross average weekly wage paid licensed practical nurses in the general area of the claimant's domicile and shall be paid for eight hours per day, seven days per week.

*63 "IT IS FURTHER ORDERED that the hourly rate of pay to which claimant's wife shall be entitled shall be adjusted on January 1, 1974, and on the same date of each succeeding year, and such adjustment shall correspond to the percentage of increase or decrease in the cost of living for the previous year, as evidenced by the National Consumer Price Index."
Following this Order of the two Commissioners is this statement of J.T. Hill, Chairman of the Commission:
"Chairman Hill concurs in remanding this cause to an Attorney Referee for the purposes stated hereinabove with the exception that payment to the wife of the claimant herein for her providing nursing services should commence on the date the Motion to Controvert was filed or on a prior date that a formal demand, if any, was made for such services, and not from July 8, 1964."
Upon remand to the attorney-referee, the claimant moved to file an amended petition to pray for nursing services from and after July 8, 1964, and the employer and carrier renewed their Motion for Leave to Amend their Pleadings.
The attorney-referee was of the opinion that he was limited in the remand order of the Commission to receiving testimony only on the number of hours per day required for nursing services since July 8, 1964, and the hourly rate of pay for a licensed practical nurse since July 8, 1964. He, therefore, overruled both the claimant's and the employer's and carrier's motions to amend their pleadings, and limited testimony to the number of hours of nursing services rendered in the home and the rate of pay for licensed practical nurses.
On March 8, 1974, the attorney-referee entered his Order finding that Mrs. Ernest M. Graham, wife of claimant, was entitled to a total of $60,347.15 for nursing services performed by her in the home for the period commencing July 8, 1964 and ending December 18, 1973, broken down as follows:

Date Hours per Day Hourly Rate Total 
7/8/64-12/31/64
(Less 86 days) 13 $1.00 $ 1,183.00
1/1/65-12/31/65 13 $1.00 $ 4,745.00
1/1/66-12/31/66 13 $1.10 $ 5,219.50
1/1/67-12/31/67 11 $1.40 $ 5,621.00
1/1/68-12/31/68 11 $1.65 $ 6,642.90
1/1/69-12/31/69 11 $1.85 $ 7,427.75
1/1/70-12/31/70 11 $2.00 $ 8,030.00
1/1/71-12/31/71 11 $2.00 $ 8,030.00
1/1/72-9/11/72
(Less 3 days) 11 $2.00 $ 5,544.00
9/12/72-12/31/72
(Less 13 days) 8 $2.00 $ 1,568.00
1/1/73-12/18/73 8 $2.25 $ 6,336.00

In spite of the fact that the claimant only prayed for $392.87 per month for Mrs. Graham, beginning February 23, 1972, the attorney-referee found that Mrs. Graham was entitled to these amounts:

 Calendar year: Amount per month:
 1964 $ 205.74
 1965 $ 395.42
 1966 $ 434.96
 1967 $ 468.42
 1968 $ 553.57
 1969 $ 618.98
 1970 $ 669.17
 1971 $ 669.17
1/ 1/72- 9/11/72 $ 665.55
9/12/72-12/31/72 $ 448.00
1/ 1/73-12/18/73 $ 550.96

On July 8, 1974, the Commission, by a two-to-one vote, affirmed the attorney-referee's supplemental order of March 8, 1974, Chairman Hill again voting to affirm the payment for nursing services subsequent to February 24, 1972, but voting to reverse the order of the attorney-referee for the payment of nursing services rendered prior to February 24, 1972.
Dr. Charles L. Neill, neurosurgeon and claimant's principal doctor, testified on cross-examination that four hours a day would be sufficient to take care of Graham's nursing needs, if there were "somebody to cook his meals and feed him and that sort of thing."
Dr. S.L. Bailey, general practitioner and claimant's family physician, testified that there should be someone available to answer his needs within a reasonably short period of time.
*64 Dr. W.H. Merrell, a urologist of Jackson, Mississippi, testified that on September 12, 1972, he operated on the claimant and removed the obstruction in the bladder neck which mostly remedied his urological problem. Dr. Merrell testified that strictly from a urological standpoint, the claimant needed no nursing services after he returned home.
The claimant and his wife both testified that Mrs. Graham had to give the claimant an enema every two or three days, which required at least an hour's work on her part each time. For a rather long period of time there was daily catherization and additional cleanup of the claimant and his bed.
The Grahams had three children. Mrs. Graham had no domestic help and, by dent of working long hours every day, was able to look after the children, the home, and the special nursing needs of her husband. Her testimony and that of the claimant hopelessly intermingled his special nursing needs with her general household duties of preparing meals, washing clothes and cleaning the home.
The question of paying a wife for special nursing services rendered her husband in the home is a matter of first impression in Mississippi. Larson makes this observation:
"The commonest controversy is the question whether practical nursing services performed by the claimant's own wife may be made the subject of a claim for nursing expenses. The earlier cases denied the allowance, [footnote omitted, on the ground that the wife did no more than she was bound to do as an affectionate spouse. Later cases, however, have permitted the charge, on the reasoning that the employer, by statute, has the affirmative duty of furnishing this kind of nursing service. [footnote omitted]. If he has not done so, and if the wife then takes over these duties in addition to her regular household work and does exactly what a hired nurse would have had to do, the charge is proper." 2 Larson Workmen's Compensation Law, § 61.13 (1976).
Mississippi's statute on this subject [Mississippi Code Annotated section 71-3-15 (1972)], provides in part:
"(1) The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of recovery may require. If the employer fails to provide the same after request by the injured employee, such injured employee may do so at the expense of the employer. The employee shall not be entitled to recover any amount expended by him for such treatment or services, except in emergency cases, unless he shall have requested the employer to furnish the same and the employer shall have refused or neglected to do so, or unless the nature of the injury required such treatment and services and the employer or his superintendent or foreman, having knowledge of such injury, shall have neglected to provide the same. Nor shall any claim for medical or surgical treatment be valid and enforceable, as against such employer, unless within twenty (20) days following the first treatment the physician giving such treatment furnish to the employer and the commission a report of such injury and treatment, on a form prescribed by the commission. The commission may, however, excuse the failure to furnish such report within twenty (20) days when it finds it to be in the interest of justice to do so, and may, upon application by a party in interest, make an award for the reasonable value of such medical or surgical treatment so obtained by the employee."
It is undisputed that the claimant did not request his employer or carrier to furnish him nursing services in his home until February 23, 1972, and even then his request was couched in language that indicated that it was for present and future nursing needs. The only alternative to notice and request is outlined in this language of the statute:
"[O]r unless the nature of the injury required such treatment and services and *65 the employer or his superintendent or foreman, having knowledge of such injury, shall have neglected to provide the same."
But all paraplegics do not require or need the same attention and treatment, nor do they need the same nursing services. One paraplegic might leave home, drive himself to work, work all day, and drive himself home, without a moment's trouble. Another might need almost constant attention and treatment. Each case must be considered on its own merits; there is no standard solution for every case regardless of the facts.
The defendants were never heard on their defenses of no notice, no request, no doctor's prescription, nor on their defenses of the several statutes of limitation.
When the claimant tried to file an amended petition to cover nursing services for the past eight years, and when the defendants tried to amend their answer to assert these defenses, the attorney-referee overruled their motions to amend, under the impression that the Commission on remand to him had limited the further hearing to the hours worked each day and the rate of pay per hour in the community.
We are not able to decide these matters because they were not heard and litigated below. The record is lacking in testimony and evidence on these crucial issues.
We have no difficulty in finding that the order of the circuit court providing that Mrs. Graham be paid $2.25 per hour for four hours nursing service a day from and after February 23, 1972, to March 26, 1975, less a period of 16 days during which claimant was hospitalized, should be affirmed. The overwhelming weight of the evidence supports this finding.
However, we are of the opinion that the circuit court should be reversed and this cause remanded to the Workmen's Compensation Commission so that the claimant can file an amended petition to put in issue payment for nursing services rendered by his wife to him in the home from July 8, 1964, to February 23, 1972. The employer and carrier should be allowed to file an amended answer raising all defenses that they desire to make. A full hearing should be afforded both sides. Required nursing services should be separated from general household duties and work that a wife ordinarily performs in and about the home in looking after and caring for her husband and children. There should be testimony from doctors as to how many hours per day would be required for special nursing services for the claimant from July 8, 1964, to February 23, 1972.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, SUGG, WALKER, BROOM and LEE, JJ., concur.