## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 93-CC-00521-SCT

*MISSISSIPPI TRANSPORTATION COMMISSION*

*v.*

*GLOVER I. DEWEASE*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 04/05/93 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: RICHARD E. WILBOURN III |
| ATTORNEYS FOR APPELLEE: | MICHAEL H. STEELE |
| | FRANK H. SHAW, JR. |
| NATURE OF THE CASE: | CIVIL - WORKER'S COMPENSATION |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART - 12/12/96 |
| MOTION FOR REHEARING FILED: | 12/23/96 |
| MANDATE ISSUED: | 5/5/97 |

**EN BANC.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. The original opinions in this case are withdrawn and these opinions are substituted therefor.

¶2. This appeal arises from an April 5, 1993 decision of the Neshoba County Circuit Court which affirmed an order of the Workers' Compensation Commission awarding relief to Glover Dewease, a retired Highway Commission employee injured in 1974, in the form of additional "medical benefits" and interest thereon. The Mississippi Transportation Commission (formerly the Mississippi State Highway Commission) appeals the extent of compensation awarded to the claimant's wife for caring for her husband over and above that which was agreed to by the parties in 1982, as well as reimbursement for two wheelchair vans and the purchase of a third. On cross-appeal, Dewease asserts that the Workers' Compensation Commission erred in not awarding penalties and interest. We affirm the decisions of the tribunals below except in finding that reimbursement for three vans and

compensation for sixteen hours per day of home nursing care between 1974 and 1988 are not supported by the evidence in the record. Accordingly, we reverse and render the award of the three vans, and reverse and remand for further proceedings on the issue of proper compensation for nursing care provided by Mrs. Dewease.

## I.

¶3. Sixty-one year old Glover Dewease, an equipment operator for the Mississippi State Highway Department, sustained a fractured leg and various other injuries to his abdominal area and lower extremities when the tractor he was attempting to start ran over him on August 20, 1974. Dewease, who suffered from arteriosclerosis, subsequently had a stroke, apparently while awaiting medical treatment, that left his right side paralyzed and seriously affected his speech. The Highway Department, a self-insured entity, paid all of his medical bills and compensated him with the maximum permanent total disability benefits provided by statute.

¶4. B.R. Taylor, who handled workers' compensation claims for the Highway Department from 1968 until 1987, and a representative from the Workers' Compensation Commission, Ed Smith, met with Mrs. Dewease in late 1982 after she called Taylor about getting some assistance in taking care of her husband. Taylor had visited the Deweases on several previous occasions over the years to make sure that Dewease had the equipment necessary for his care as well as various modifications to the house. In their meetings and conversations, Mrs. Dewease emphasized that she did not want her husband to go to a nursing home, stating, "As long as I'm alive and here he'll not go into a nursing home."

¶5. At the 1982 meeting, it was determined that rather than bringing in outside help, which Mrs. Dewease didn't want, she would be compensated for taking care of her husband. Taylor testified:

> It turned out that she had decided that, if she was going to take care of Mr. Dewease in her home, that she wanted to be paid for it. So we discussed with her a good long time as to, you know, what she thought was adequate or what we thought was adequate. I believe the man that went with me was Ed Smith from the Workers' Comp Commission, and we finally decided between the three of us that we would pay her four hours a day, minimum wage, seven days a week, 365 days a year, in addition to the other things that we were doing, like building her a driveway, building a shed over the van, revamping the bathroom, putting a ramp out the front door where the wheelchair could roll up and down the ramp where she could move him.

> We built the pad at the end of the porch where the van could drive up on the pad, and she could just roll Mr. Dewease from the porch into the van, and she wouldn't have to roll him outside or anything. We came back. We started paying her in December of 1982 the amount we had agreed upon.

Taylor stated that this was the first time in his experience that a claimant's spouse had requested compensation of this sort and Smith explained to Mrs. Dewease that she could be reimbursed only for actually taking care of her husband, and not for "regular household, wifely-type duties." He stated:

> In the course of conversation, [Smith] told her that she was not entitled to the regular wifely duties, that she would not be entitled to that, and what he told her was, we would pay her for

getting him out of bed in the morning, changing his clothes during the day, giving him a bath, and putting him back in bed at night when he got ready to go to bed, and this was the four hours we discussed with her. Everybody thought that four hours would be sufficient for those type of things. We told her we couldn't pay her for cooking his meals and things like that.

He further testified that Mrs. Dewease neither objected to the compensation as inadequate nor asked for the four-hour allotment to be increased at anytime between 1982 and 1988.

¶6. Mrs. Dewease claims that prior to his admission to the nursing home in 1988, she spent fifteen hours a day providing "nursing care" to her husband. She had to get him in and out of bed. She spent a half hour each day putting clean sheets on his bed. Changing his clothes twice a day and bathing him took about two hours a day "because I wanted, I put a lot of rubbing on him." Helping him go to the bathroom required another hour per day. Dewease was able to feed himself, but Mrs. Dewease allotted thirty minutes per meal for him to eat, as well as an hour and one half per day for meal preparation. Every day they would spend five or six hours riding around in the van, sightseeing, visiting friends and going out to eat. When they returned home each day, she would spend a half hour washing his face and rubbing his paralyzed arm with alcohol. She stated that she spent also an hour or an hour and one half every night soaking and rubbing his feet, and trying to help him stand. She spent about fifteen minutes putting him to bed every night and a minimum of thirty minutes sitting up with him during the night when he couldn't sleep. An additional forty-five minutes was spent each day giving Dewease his various medications. Once or twice a month, Mrs. Dewease also would take her husband to the doctor.

¶7. A number of evaluations about the extent of care Dewease required at the time of the hearing were entered into evidence. Dr. Robert McGuire, who evaluated Dewease at the University of Mississippi Medical Center Clinic stated in a June 5, 1991 letter to Dewease's attorneys that he required twenty-four hour a day nursing assistance. It was stipulated that the Highway Commission's expert, Dr. Earl Fyke, would testify that Dewease required only eight hours a day of nursing care. Except for the fact that the parties agreed that four hours a day of care were needed in 1982, there was no evidence presented of Dewease's pre-1988 requirements.

¶8. Dewease entered Choctaw Residential Nursing Home in 1988. Mrs. Dewease testified that she didn't think that the Highway Commission or the Workers' Compensation Commission knew of his admission. She stated that Taylor had told her that the Highway Commission wouldn't pay for a nursing home, so she paid for his expenses until her funds ran out and Medicaid took over. In his affidavit, consistent with his recollections of his meetings with Mrs. Dewease, Taylor stated that Mrs. Dewease never asked him about paying for a nursing home and he did not tell her or anyone else that nursing home costs would not be covered. The record does not indicate when Mrs. Dewease stopped receiving payment for her services, what sort of notice was provided to the Highway Commission when Dewease entered the nursing home or why Mrs. Dewease stopped submitting medical and drug bills for compensation.

## II.

¶9. On January 28, 1991, the Highway Commission filed a Report of Payment and Settlement Receipt for compensable injuries suffered by Dewease in August, 1974, with the Mississippi Workers' Compensation Commission. Dewease's attorneys filed a Petition to Controvert with the Workers'

Compensation Commission on February 18, 1991. The claimant sought:

1. Payment unto his wife for all nursing unpaid to her during the entire course of his disability and impairment since 7 August, 1974.

2. Reimbursement for any unpaid medicals including drugs, travel to and from doctors, rehabilitative services, transportation costs, including cost of furnishing vans and appropriate equipment pertaining thereto.

3. Rehabilitative measures not yet supplied including retraining, physical therapy, and unpaid medical care at local hospitals for persistent kidney problems and other various problems associated with the injury and the sequela [sic] therefrom.

4. Penalties, as applicable, on all of the aforelisted and hereinafter listed items.

5. Repair of, maintenance of, and upkeep of existing changes made to claimant's house by defendant so that claimant can visit his home freely.

6. Replacement wheelchair unit for wheelchair which collapsed from use.

7. Reimbursement to claimant and/or to nursing home or Social Security Administration or Veterans Administration, as applicable, for unpaid in home nursing care service required by claimant.

8. Purchase of new van for transportation of claimant to and from his home for his visits with his family as allowed by physicians.

9. Any and all other medical care, attendant care, services, appurtenances, supplies, prosthetics, drugs, and the like under Section 7 of The Act, which are shown by proof to be reasonable and necessary for the recovery and/or maintenance of claimant due to injury.

¶10. In her February 12, 1992 order, the Administrative Law Judge found that Dewease had received the full statutory benefits for permanent total disability since his August, 1974 accident. She then found that Mrs. Dewease had been compensated at a rate of $100.00 per week for her nursing services from December 1, 1982 until March 1, 1988, when Dewease was admitted to a nursing home. Crediting the Highway Department with $24,414.80 for nursing services paid, the ALJ determined that no statute of limitations barred the Deweases' claims for additional medical benefits. She found that Dewease's impairment required sixteen hours a day of nursing services, separate and apart from Mrs. Dewease's ordinary housekeeping duties, from the date of the injury in 1974, until the time he was admitted to a nursing home in 1988. She determined that all of the services rendered by Mrs. Dewease required, at a minimum, the level of skill of a Licensed Practical Nurse. The ALJ determined that the Highway Commission should be liable for all Dewease's nursing home expenses and affixed penalties to those charges, stating that "[t]he Highway Department knew or should have known from its observation of Claimant at home and from the medical reports it received that Claimant was in a helpless condition." Finally, the ALJ found that the Highway Commission should pay for "all necessary and reasonable medical care and service for claimant, including the furnishing of a new van."

¶11. The Highway Commission was ordered to pay for all reasonable and necessary medical services and supplies pursuant to Miss. Code Ann. § 71-3-15, including compensation to Mrs. Dewease for sixteen hours a day, 365 days a year, at the prevailing rate for licensed practical nurses, from the time of the injury in 1974 until the claimant's admission to Choctaw Residential Nursing Home in 1988. The Highway Commission further was ordered to reimburse Mrs. Dewease, Medicaid and the Veteran's Administration for nursing home costs incurred on Mr. Dewease's behalf. The ALJ ordered the Highway Commission to reimburse Mrs. Dewease for the cost of two vans and alterations to those vehicles not already paid for by the Highway Commission, and further ordered the Department to purchase a new or suitable used van with a lift to transport Dewease to and from the nursing home for family visits. Finally, the ALJ applied penalties to all unpaid nursing expenses until the time Medicaid started paying Dewease's nursing home expenses.

¶12. The Highway Commission filed its petition for review of the ALJ's decision on February 27, 1992, asserting that the findings and award were contrary to the overwhelming weight of the credible evidence and contrary to law.

¶13. On April 6, 1992, Dewease filed a motion for penalties and interest on all unpaid amounts and sought the immediate purchase of a van. Dewease further filed a Motion for Provision of Van Before Death on April 23, 1992. His motion for penalties was renewed on June 22, 1992. The Highway Commission responded that the motions were not timely filed, and further, that in light of the Commission's ruling, they were moot.

¶14. The Commission determined that the ALJ's findings of fact were supported by the record and adopted those findings as its own. In its October 1, 1992 order, it affirmed the ALJ's order, except with regard to penalties on unpaid medical benefits. The Commission did find, however, that Dewease was entitled to interest on all accrued and unpaid medical benefits at the prevailing legal rate.

¶15. Dewease filed a motion for clarification of penalties on October 9, 1992. The Highway Commission responded, asserting that the ALJ did not award prejudgment interest and Dewease did not cross-appeal that decision, thus waiving his claim. The Highway Commission further argued that the Workers' Compensation Commission was not authorized to impose prejudgment interest on unliquidated damages absent statutory or contractual authorization or a finding of facts warranting the imposition of punitive damages.

¶16. On November 2, 1992, the Highway Commission filed its petition for appeal and review before the Neshoba County Circuit Court, asserting that the Workers' Compensation Commission erred in finding that Mrs. Dewease was entitled to compensation for at-home care based on sixteen hours a day at a wage rate equal to that of a licensed practical nurse and further, in its award of vans for transportation. Dewease filed a cross-appeal, asserting that the prejudgment interest was applicable to all unpaid medical expenses incurred after August, 1974. The circuit court affirmed the Commission's order on April 5, 1993.

III.

¶17. It is well-established that nursing care provided by a relative to an injured claimant is compensable as a medical benefit pursuant to Miss. Code Ann. § 71-3-15(1), which requires the

employer to provide "such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury may require." *City of Kosciusko v. Graham,* 419 So. 2d 1005, 1009 (Miss. 1982) (*Graham II*); *Babcock & Wilcox, Co. v. Smith,* 379 So. 2d 538, 539-540 (Miss. 1980); *Graham v. City of Kosciusko*, 339 So. 2d 60 (Miss. 1976)(*Graham I*). *See generally,* Appel, *Workers' Compensation: Recovery for Home Service Provided by Wife,* 67 ALR 4th 765 (1989).

¶18. The ALJ, the Commission and circuit court correctly found that Mrs. Dewease was entitled to compensation for providing nursing services to her husband. At issue is the amount of compensation she should receive. In determining whether the award of compensation for home nursing services is supported by the evidence, we are first asked to consider the ALJ's findings as to the number of hours per day for which Mrs. Dewease should be compensated and the period of time covered. The Highway Commission, which had agreed that Mrs. Dewease was entitled to compensation for an additional three and one half to four hours a day between 1982 and 1988 and so paid her, challenges the ALJ's finding that she should be compensated for care given to her husband sixteen hours a day for nearly fourteen years, from the time of the accident, until Dewease was admitted to the nursing home.

¶19. Pursuant to an agreement between Mrs. Dewease and the Highway Commission, made with the guidance of a representative from the Workers' Compensation Commission, Mrs. Dewease was paid $100.00 per week for four hours a day of services to her husband, seven days a week, from 1982, when she requested compensation, until 1988, when he entered a nursing home. It was only after the Report of Payment and Settlement Receipt was filed with the Mississippi Workers' Compensation Commission on January 28, 1991, that Mrs. Dewease sought compensation for her services prior to 1982 and for additional hours between 1982 and 1988. Contrary to the Highway Commission's assertions, however, Dewease's claim is not barred by laches, estoppel or the statutes of limitation provided by Miss. Code Ann. §§ 71-3-35(1) and 71-3-53 because medical benefits had been paid to Dewease. *Graham II*, 419 So. 2d at 1008.

¶20. We note that until 1991, when the Payment and Settlement Receipt was filed by the Highway Commission, no requests for services were made over and above those to which Mrs. Dewease and the Commission agreed. Miss. Code Ann. § 71-3-15(1), in effect at the time of Dewease's injury, provided:

> The employee shall not be entitled to recover any amount expended by him for such treatment or services, except in emergency cases, unless he shall have requested the employer to furnish the same and the employer shall have refused or neglected to do so, or unless the nature of the injury required such treatment and services and the employer or his superintendent or foreman, having knowledge of such injury, shall have neglected to provide the same.

¶21. As distinguished from this Court's decision in *Smith*, where the claimant's 1971 request for payment to his wife for her nursing assistance was refused on grounds that the law did not provide for such benefit, there is no evidence that any other requests for nursing services were made by Mrs. Dewease and rejected by the Highway Commission. To the contrary, there is evidence that prior to 1982, B.R. Taylor, when visiting the Deweases, had asked about putting Dewease in a nursing home or getting outside assistance for Mrs. Dewease, but she refused. Given the relative novelty of

providing compensation for a relative's home nursing services when the agreement was made in 1982, and considering the beneficent purposes of the Act, we now address Dewease's claim.

¶22. The ALJ found that Mrs. Dewease was providing her husband with sixteen hours a days of nursing care despite her testimony that she spent fifteen hours a day taking care of him. That included the five or six hours a day she spent going out to eat, sightseeing and visiting friends with him. The ALJ's findings further do not appear to have separated that part of Mrs. Dewease's duties which could be considered general household duties, such as laundry and fixing meals, from actual nursing care.

¶23. Other witnesses testified that Dewease now required twenty-four hour a day care in the nursing home. It was stipulated that the Highway Commission's expert would testify that Dewease required only eight hours a day of actual nursing care. The Highway Commission also conceded that Mrs. Dewease was entitled to an additional three and ½ hours a day of compensation between 1982 and 1988.

¶24. The evidence presented to the commission below, addressed only the level of care Dewease required prior to entering the nursing home in 1988, or that he needed at the time of the hearing, when he was seventy-eight years old. There was no evidence presented regarding the extent of care required in the years immediately after the 1974 accident when Dewease could walk with assistance and before he was afflicted by some of the additional physical ailments that beset him later in life. In *Graham I*, where the claimant sought to obtain additional payment for nursing services provided by his wife, the case was remanded to the Commission with the directive:

> Required nursing services should be separated from general household duties and work that a wife ordinarily performs in and about the home in looking after and caring for her husband and children. There should be testimony from doctors as to how many hours per day would be required for special nursing services for the claimant from July 8, 1964, to February 23, 1972.

*Graham I,* 339 So. 2d at 65. Although that case was remanded to consider claims not originally put before the Commission, it highlights our chief concerns about the ALJ's findings in the case *sub judice*: the record does not support the finding that Mrs. Dewease spent sixteen hours a day providing "nursing care" for her husband separate and apart from her ordinary household duties between 1982 and 1988, and there was no evidence whatsoever regarding his condition or the extent of "nursing care" required prior to 1982. As in *Graham I,* additional evidence is needed to determine how many hours a day of actual nursing care was been needed prior to the time Dewease's condition began to deteriorate.

IV.

¶25. In the second part of the compensation equation, we are asked to determine the proper wage rate for Mrs. Dewease's services to her husband. Dewease contends that the services performed by Mrs. Dewease were akin to those performed by a licensed practical nurse and therefore, the Highway Commission "should not now be permitted to perform before this Court an exercise in the intellectual castration of gnats" in requesting that she be compensated at minimum wage.

¶26. We have affirmed compensation for services provided by the wife of a paraplegic for eight hours

a day at the minimum wage rate. *City of Kosciusko v. Graham*, 419 So. 2d 1005 (Miss. 1982) (*Graham II*). Like Mrs. Dewease, Mrs. Graham had asserted that she spent between fourteen and fifteen hours a day caring for her husband.

> Due to his paralysis, claimant had no function in his urinary or intestinal tracts. Therefore, claimant had to be catheterized as well as given enemas to induce the natural bodily functions he had lost as a result of his accident. Claimant also had to be given his medication, propped up, bathed, and turned frequently to prevent skin irritations. Claimant also required frequent cleanings from bladder spills and enemas as did his clothing and bed linens. Claimant's wife performed all these functions in addition to her household activities.

*Graham II,* 419 So. 2d at 1006. In *Graham II,* evidence was presented of the wages paid to licensed practical nurses during the years home care was provided, as well as of the fact that nurses aides were paid minimum wage. *Id.* at 1009. In the case *sub judice*, evidence was presented only of the wages for registered nurses and licensed practical nurses at the time of the hearing in 1991, with vague estimates of the rates in 1988 and no figures prior to that time.

¶27. Evidence was presented that for the period of time he had been in a nursing home, Dewease required the care of someone skilled, but not necessarily a registered nurse. The aid of a licensed practical nurse or registered nurse was required only for administering medication or when he had "acute episodes" with his kidneys. There is no indication of the level of skill required in caring for Dewease prior to that time. However, affirming an award for a spouse's "nursing care," this Court has found that it was insignificant that "the assistance requested involves essentially non-technical tasks resembling those performed by orderlies or licensed practical nurses in hospitals." *Smith,* 379 So. 2d at 540.

¶28. Absent specialized skills or training on the part of the relative or the relative's need to give up a higher paying job to care for the claimant, courts in other jurisdictions generally have affirmed home care benefits at a rate less than that paid to a licensed practical nurse. *See e.g. United States Fidelity & Guaranty Co. v. Beardon*, 700 S.W. 2d 247 (Tex. App. 1985)(jury award for nursing services reduced to rate commensurate with minimum wage); *Sheraton Bal Harbour v. Platis,* 447 So. 2d 987 (Fla. 1984)(wife compensated at $5.00 per hour professional sitter rate, rather than at local hourly rate of $6.50 for a nurse's aid); *Trejo v. Michigan Sugar Co.,* 133 Mich. App. 753, 350 N.W. 2d 314 (1984)(wife's services compensable at rate for "common labor" in the community); *Wasson v. Losey*, 11 Ark. App. 302, 669 S.W.2d 516 (1984)($100.00 per week for time covered by agreement with employer; thereafter minimum wage); *Brown v. Eller Outdoor Advertising Co.,* 111 Mich. App. 538, 314 N.W. 2d 685 (1981)(payment for wife's services at same rate as nurse's aid); *Lundgren v. Paul Schmitt Music Co.,* 296 Minn. 517, 207 N.W. 534 (1973)(wife of paraplegic awarded $125.00 per month for her services during period of temporary total disability and $70.00 per week after temporary benefits ceased); *Finch v. Texas Employers' Insurance Assoc.,* 564 S.W. 2d 807 (Tex. Civ. App. 1978)(wife's services equivalent to that of a nurse's aid and compensated at rate of $2.50-$3.00 per hour). *See generally,* Appel, *Workers' Compensation: Value of Home Services Provided by Victim's Relative,* 65 ALR 4th 142 (1988).

¶29. On remand, additional proof, including medical testimony, regarding the nature of the services Mrs. Dewease performed for her husband is necessary to determine the extent to which she should be

compensated at the rate a practical nurse is paid. Further, because she seeks compensation for services performed over a fourteen-year period, evidence of the wage rate paid during the time frame in question is required.

V.

¶30. The Highway Commission next asserts that it should not be required to reimburse Dewease for the cost of two vans used over the years to transport him on his daily excursions or for the purchase of a new one to take him on outings from the nursing home. It argues that such a vehicle does not fall within the definition of "other apparatus . . . as the nature of the injury or the process of recovery may require" found in Miss. Code Ann. § 71-3-15(1). Further, the Highway Commission argues that there has been no showing that a specially-equipped van is medically necessary for Mr. Dewease's care.

¶31. Whether an employer should be required to provide an injured employee with a specially-equipped vehicle pursuant to § 71-3-15(1) is a question of first impression for this Court. Indeed, very few jurisdictions have addressed the issue, and the results have been varied. The Florida Courts have interpreted statutory language which requires the employer/carrier to provide a claimant with "such medically necessary remedial treatment, care and attendance as the nature of the injury or the process of recovery may require . . . including . . . medically necessary apparatus" as encompassing specially-equipped vehicles where there is a showing of medical necessity. *Aino's Custom Slip Covers v. DeLucia,* 533 So. 2d 862 (Fla. 1988); *Edgewood Boys' Ranch Foundation v. Robinson,* 451 So. 2d 532 (Fla. 1984). In Arizona, the courts have taken a particularly liberal approach, allowing as an "other apparatus" a van equipped for a paraplegic because the vehicle replaced a lost bodily function. *Terry Grantham Co. v. Industrial Comm'n,* 1543 Ariz. 180, 741 P.2d 313 (1987).

¶32. In contrast, the New York court found that a vehicle which enabled the wheelchair-bound claimant to go to and from work was not a "medical apparatus or device" within the scope of the State's Workmen's Compensation Law. *Nallan v. Motion Picture Studio Mechanics Union, Local No. 52*, 49 A.D.2d 365, 370, 375 N.Y.S. 2d 164, 168 (1975); *rev'd on other grounds*, 40 N.Y.S.2d 1042, 391 N.Y.S.2d. 853, 360 N.E.2d 353 (1976). The North Carolina court likewise found that a van specially equipped for a claimant whose legs and hand had been amputated was stretching too far the statutory provision for "other treatment or care" or "rehabilitative services." *McDonald v. Brunswick Electric Membership Co.,* 77 N.C. App. 753, 336 S.E. 2d 407 (1985). In South Dakota, the Court upheld the State's Workmen's Compensation Commission's denial of a specially-equipped van for a claimant confined to a wheelchair. *Johnson v. Skelly Oil Co.*, 359 N.W.2d 130 (S.D. 1984) .

¶33. Given the beneficent purposes of the Act, we find that where there is evidence that a wheelchair van is reasonably necessary, it may qualify as an "other apparatus" for which medical benefits shall be paid. The operative question, therefore, is whether such a van was necessary for Mr. Dewease. The record does not support the findings of the tribunals below that specially-equipped vans were necessary either while Dewease lived at home or since he has been moved to a nursing home. Moreover, the only evidence of Mrs. Dewease's expenditures is her testimony that she bought one van in 1983 for $17,000 and at some point in time, a used van for $15,000. Accordingly, we reverse and render on that issue.

VI.

¶34. On cross-appeal, Dewease contends that interest and penalties should be assessed against the Highway Commission for all medical benefits found to be owed since 1974. When considering the imposition of penalties,

> The rule requiring liberal construction of the Act generally does not apply to provisions for the imposition of penalties. Such provisions, on the contrary are to be strictly construed. The presumptions are against one claiming a statutory penalty and all questions of doubt are resolved in favor of the one against whom the penalty is sought to be imposed.

V. Dunn, *Mississippi Workmen's Compensation*, § 305 (3d. ed. 1982). Throughout his brief, Dewease's attorney paints a picture of benign neglect on the part of the Highway Commission, drawing from Homer and Shakespeare to highlight the pathos of this elderly couple. The record simply does not support these assertions; rather, it indicates that the Highway Commission provided Dewease with myriad services which contributed greatly to the comfort and convenience of both Dewease and his wife, the primary care giver.

¶35. The Commission correctly found that medical expenses were not subject to the penalties set forth in Miss. Code Ann. § 71-3-37(5) and (6), which provide for a ten percent (10%) penalty on unpaid installments of compensation payable without an award and a twenty percent (20%) penalty on installments made pursuant to an award. *International Paper Co. v. Kelley,* 562 So. 2d 1298, 1302 (Miss. 1990). The *Kelley* Court relied on the decision in *J.H. Moon & Sons v. Hood*, 244 Miss. 564, 144 So. 2d 782 (1962), which construed the same language in Miss. Code Ann. § 6998-19 (1942) as follows:

> The statute provides for a penalty on "any installment, payable under the terms of an award." This has reference to weekly installments of compensation benefits, according to its own terms, and not to medical expenses. The word "installment" mean [sic] "a portion of a debt or sum of money which is divided into portions that are made payable at different times." Webster's International Dictionary (2d Ed.) P. 1287. **Medical expenses do not fall within this definition. Moreover, provisions for penalties are strictly construed. Doubtful questions as to them are resolved in favor of the one against whom the penalty is sought.**

*Moon,* 244 Miss. at 572, 144 So.2d at 784 (emphasis added). The Highway Commission, therefore, cannot be charged a penalty for any medical benefits now owing. *See* V. Dunn, *Mississippi Workmen's Compensation*, § 300.1 (Supp. 1990). Moreover, the fifteen percent (15%) penalty for an unsuccessful appeal is appropriate only when the lower court's decision is affirmed in its entirety. *M & J Oil Co. v. Dependents of Wilson*, 507 So. 2d 1292, 1293 (Miss. 1987).

VII.

¶36. Workers' Compensation claims, and the laws that govern them, are to be construed broadly and liberally in favor of the claimant. *DeLaughter v. South Central Tractor Parts*, 642 So. 2d 375, 379 (Miss. 1994); *Greenville Electric Co. v. McKinnon*, 507 So. 2d 363, 367 (Miss. 1987); *Barham v. Klumb Forest Products Center, Inc.*, 453 So. 2d 1300, 1304 (Miss. 1984). This Court will reverse an order of the Workers' Compensation Commission only when its findings are arbitrary or

capricious. ***Berry v. Universal Mfg. Co.,*** 597 So. 2d 623, 625 (Miss. 1993); ***Walker Mfg. Co. v. Cantrell,*** 577 So. 2d 1243, 1247 (Miss. 1991); ***Fought v. Stuart C. Irby Co.***, 523 So. 2d 314, 317 (Miss. 1988). Where there is substantial evidence to support the Commission's findings, this Court will affirm. ***Berry,*** 597 So. 2d at 625.

¶37. Under Mississippi law, Mrs. Dewease is entitled to receive compensation for the nursing care she has given her husband over the years. However, the record does not support the award of compensation for sixteen hours a day at the rate payable to an LPN over the fourteen years for which additional benefits are sought. On that matter, we reverse and remand to the Workers' Compensation Commission for proceedings consistent with this opinion. We reverse and render, however, on the award of three specially-equipped wheelchair vans.

¶38. **DIRECT APPEAL: AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. CROSS APPEAL: AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, ROBERTS AND SMITH, JJ., CONCUR. MILLS, J., CONCURS IN RESULT ONLY. SULLIVAN, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, J.**

**SULLIVAN, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

**¶39.** I agree with the majority's decision that the Commission's award to Dewease for his wife's nursing services, as affirmed by the circuit court, is in excess of what the record suggests might be reasonable. However, I would find that although provision of a wheelchair-accessible van was not necessary after Dewease was moved to a nursing home, vans used to transport him while he lived at home were a reasonable and necessary accommodation for which compensation should be provided.

¶40. The majority correctly finds that a specially-equipped van may qualify as an "other apparatus" pursuant to Miss. Code Ann. § 71-3-15(1). It drops the ball, however, in determining that under the facts of this case, such a vehicle was not necessary for Dewease. The record reflects that his various ailments required frequent trips to the doctor and that daily outings were necessary for his mental and physical well-being. At the very least, the issue of the vans should be remanded to determine the extent of the reimbursement that should be made.

**BANKS, J., JOINS THIS OPINION.**