LEE, J.,
for the court.
PROCEDURAL HISTORY AND FACTS
¶ 1. The claimant/appellee in this case, Jesse Hughes, formerly worked for the appellant, Port Gibson Oil Works. In 1984, Hughes was injured in a work-related accident, which resulted in the loss of his left leg. Thereafter, Hughes moved to Illinois. In 1998, Hughes filed a motion to compel with the Mississippi Workers’ Compensation Commission, asking that his former employer, Port Gibson Oil Works, make substantial renovations to his Illinois home to enable him to use a wheelchair for mobility, plus pay for nursing services and in-home physical therapy. The administrative law judge who reviewed the motion reserved issuing an order to compel the renovations until Hughes presented specific evidence that such renovations were medically necessary at that time. Hughes presented the deposition of registered nurse Jackie Moore, who evaluated Hughes’s home and noted that although Hughes was presently ambulatory, he would likely become wheelchair bound in the future. Both Hughes and his wife also testified that Hughes used crutches, only using a wheelchair for outings away from home. Additionally, Hughes’s orthopedic doctor, Dr. Ronald Romanelli, verified that *614 Hughes’s health was rapidly deteriorating and that payment for nursing services was both reasonable and necessary. The administrative law judge later ordered the employer to make the requested modifications to Hughes’s Illinois home, plus ordered the employer to provide physical therapy and to compensate Hughes’s wife for certain services she performed for Hughes, including dispensing medication, performing massages and assisting with Hughes’s bath. The Commission affirmed the administrative law judge’s decision, as did the Claiborne County Circuit Court. The employer now appeals to this Court.
¶ 2. After the appellant and the appellee filed their initial briefs, Mr. Hughes died. In the reply brief, the appellant notes all claims are moot except for the claim for payment of compensation to Mrs. Hughes for nursing services rendered prior to her husband’s death. We review this issue and find the Commission had sufficient evidence to find such payment was necessary. Thus, we affirm.
DISCUSSION OF THE ISSUES
I. WAS THE COMMISSION’S DECISION TO AWARD MRS. HUGHES PAYMENT FOR NURSING SERVICES SUPPORTED BY SUBSTANTIAL EVIDENCE?
¶ 3. At the outset, we note our standard of review in this situation.
The Workers’ Compensation Commission sits as the “ultimate finder of facts” in deciding compensation cases, and therefore, “its findings are subject to normal, deferential standards upon review.”
We hold that judicial review of findings of the Commission extends to a determination of whether they are clearly erroneous. And a finding is clearly erroneous when, although there is some slight evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the Act.
J.R. Logging v. Halford, 765 So.2d 580 (¶¶ 12-13) (Miss.Ct.App.2000) (citations omitted). The employer argues that the Commission’s decision was clearly erroneous, since insufficient evidence existed to support the decision to award Mrs. Hughes payment for nursing services.
¶ 4. The statute involved with this matter is Miss.Code Ann. § 71-3-15 (Supp. 2001), which concerns payment of future medical services for work-related injuries. That statute states in part, “[t]he employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of recovery may require.” Miss.Code Ann. § 71-3-15 (Supp.2001).
¶ 5. The Commission found that Mrs. Hughes was entitled to payment for providing four hours of nursing services per day to her husband, but the employer contends that such payment is not supported by evidence. A primary question is whether or not the services rendered were necessary or medically prescribed, or were simply performed by a spouse to assist Mr. Hughes and to improve his quality of life. A leading Mississippi treatise has addressed this situation.
The Act provides for the payment by the employer for such nursing services as the nature of the employee’s injury may require. This includes nursing care in the employee’s home. There is no statutory limitation and the employer’s obligation to provide nursing care is measured .by the reasonable requirements *615 for nursing services in the circumstances of each case.
In some instances the spouse of an injured employee may be able, willing and desirous of providing the required nursing care in the home. In such cases, the employer may be required to compensate the wife of an injured employee for nursing services provided in the home....
When the wife of an injured employee qualifies for remuneration for providing required nursing services, the rate of pay may be related to the hourly wages customarily paid to licensed practical nurses in the general area of the employee’s home. In determining the number of hours for which payment is to be made, it is necessary to separate the required nursing services from the wife’s general household duties and work that a wife ordinarily performs in the home in caring for her husband and family. It is also desirable that the testimony of doctors be produced in proof of the nature and extent of the patient’s requirements. Upon proof of this nature, the commission may make a fair approximation of time required for special nursing services and direct the employer to compensate the wife of an injured employee on this basis.
In evaluating a spouse’s function in terms of the “nursing” services allowable under the Act, it is immaterial that the services are willingly performed or that the tasks are essentially non-technical, such as those routinely performed by orderlies or practical nurses in hospitals. For example, assistance from the wife of a paraplegic with his prescribed therapeutic exercises may qualify as an allowable nursing service, although no special medical training is required.
Dunn, Mississippi Workmen’s Compensation, § 341.1 (3d Ed.1982).
¶ 6. The Mississippi Supreme Court first addressed the question of one spouse providing nursing services for another spouse in Graham v. City of Kosciusko, 339 So.2d 60 (Miss.1976). In Graham, the claimant’s wife sought payment for nursing services she rendered to her husband from the time of his injury in 1964 up to 1975. Graham, 339 So.2d at 62. The court found payment was in order, but also found that it was unable to calculate such award since insufficient testimony and evidence was presented concerning the nature of the duties and how many hours per day the wife performed such duties. Id at 65. The court did give guidance for the lower court on remand, instructing the court to separate required nursing services from general household duties and work that a wife ordinarily performs in and about the home in looking after and caring for her husband and children. Id. Additionally, the court requested the claimant to obtain testimony from doctors as to how many hours per day were required for special nursing services for the claimant. Id. After remand, the Graham matter again came before the supreme court in 1982. See City of Kosciusko v. Graham, 419 So.2d 1005 (Miss.1982) (“Graham II”). With this second appearance, the supreme court affirmed the lower court’s finding that the claimant’s wife was entitled to backpay for the appointed period at a rate of minimum wage for eight hours of work per day, seven days a week. Graham, 419 So.2d at 1009.
¶ 7. In Babcock & Wilcox Co. v. Smith, 379 So.2d 538 (Miss.1980), the supreme court also affirmed payments to a claimant’s wife for nursing duties performed for her husband, stating:
[Practical nursing services over and above that called for by the ordinary duties of a wife in a normal home may be compensated as medical services un *616 der the Mississippi Workmen’s Compensation Law. We follow this rule, because without it, we would frustrate the remedial purposes underlying the statute. The claimant could not otherwise be made whole because his injury would operate as an excessive, unrewarded burden upon his family.... We also think insignificant the fact that the assistance requested involves essentially non-technical tasks resembling those performed by orderlies or licensed practical nurses in hospitals
Smith, 379 So.2d at 539-40. In Smith, those duties the wife performed included assistance with bathing, clothing, and assisting with her husband’s exercise program. Id. at 539.
¶ 8. We finally take note of the supreme court’s more recent case of Mississippi Transp. Comm’n. v. Dewease, 691 So.2d 1007 (Miss.1997). In Dewease, pursuant to a 1982 agreement with the employer, which was entered into eight years after the accident, the wife of the claimant was paid for fours hours of taking care of her husband, specifically for getting him out of bed in the morning, changing his clothes, bathing him, and helping him into bed at night. In 1988 the claimant was placed in a nursing home. At that point, he sought additional pay from the employer, over and above that agreed to in 1982, claiming that his wife’s services had increased to sixteen hours of daily care for her husband. The administrative law judge determined that sixteen hours a day were needed to care for the husband at a pay rate of at least that of a licensed practical nurse. The Full Commission and the circuit court both affirmed the decision of the administrative law judge. The supreme court, however, reviewed the evidence and found that additional evidence was needed, including medical testimony and information concerning pay wages, to determine how many hours a day of actual nursing care were needed prior to the time the husband’s condition began to deteriorate. Id. at 1014-15.
¶ 9. Looking to the present case, the testimony showed that Mrs. Hughes provided care for her husband including dispensing medication, assisting in exercises, bathing him, massaging him when he was in pain, cleaning his “stump” where his leg had been amputated, getting up at night to clean his urinal and to change his sheets if he had an accident, assisting him in getting into bed from his wheelchair, and helping him when he frequently fell in the house. The administrative law judge determined that Mrs. Hughes was entitled to payment at minimum wage for four hours of nursing services per day. The Full Commission affirmed the order, as did the Claiborne County Circuit Court. Looking to the rules stated from Graham I & II, Smith and Dewease, we agree with the Commission that sufficient evidence was presented to- show that Mrs. Hughes was entitled to compensation for the services she provided for her husband.
¶ 10. The employer claims that a doctor must testify concerning how many hours per day are required for special nursing services. We do not read Graham I and Dewease to require this. Graham was a special situation involving a paraplegic in which there was no evidence concerning where the wife’s household duties ended and where her “nursing” services began. The court remanded for the Commission to gather more evidence in this regard. In fact, the court clarified, “[e]ach case must be considered on its own merits; there is no standard solution for every case regardless of the facts.” Graham, 339 So.2d at 65. Also, in Dewease, the court found that sufficient evidence was not presented to distinguish the wife’s household duties from nursing care she provided her husband. Dewease, 691 So.2d at 1014. Simi *617 lar ambiguity did not exist in the present case. When asked whether the nursing assistance provided by Mrs. Hughes was needed, Dr. Romanelli replied in his deposition testimony:
I have no doubt in my mind that this care was definitely needed, and over and above, I would say the duty of a normal wife. I do also feel that these numbers are probably conservative in terms of what has been provided to him for this severe of an injury. So I have no problem stating that these hours were needed, recommended and necessary.
Even if we were to agree with the employer that a doctor’s recommendation for services was needed before compensation could be had for a wife’s services, here, the doctor certified the services Mrs. Hughes was providing as necessary. Concerning the appropriate rate of pay, we find Dew-ease instructive:
It was insignificant that “the assistance requested involves essentially non-technical tasks resembling those performed by orderlies or licensed practical nurses in hospitals.”
Absent specialized skills or training on the part of the relative or the relative’s need to give up a higher paying job to care for the claimant, courts in other jurisdictions generally have affirmed home care benefits at a rate less than that paid to a licensed practical nurse.
Dewease, 691 So.2d at 1014 (citations omitted). The evidence shows that Mrs. Hughes’s care was a necessary part of her husband’s life. These duties do not appear to require special skills or training; thus, we find that the minimum wage pay was appropriate to compensate Mrs. Hughes for her services. As explained herein, we find no error with the decision of the Commission and affirm.
¶11. THE JUDGMENT OF THE CLAIBORNE COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J, KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS AND BRANTLEY, JJ, CONCUR. CHANDLER, J., NOT PARTICIPATING.